(Decided December 18th, 1894.)

---

## ANDREW J. WILLISON *vs.* FIRST NATIONAL BANK OF FROSTBURG Et Al.

*Insolvency—Unlawful Preferences—Attachment—Assignments.*

Under Code, Art. 47, a transfer of property or payment of money to a
creditor by merchants or traders then insolvent or in contemplation
of insolvency, with intent to give such creditor a preference, is an act
of insolvency rendering them liable to be adjudicated insolvents.

No title in the property so transferred passes to the creditor, but the
same will be vested in the trustee in insolvency ; and the trustee is
also entitled to recover from such creditor the money so paid him by
the insolvents as an illegal preference.

Where such payment or transfer of property has been made by insol-
vent merchants, with intent to create a preference, and a general
creditor issues attachments on original process, causing the same to
be laid in the hands of the parties receiving the preferences, then,
if the said merchants are subsequently adjudicated insolvents, within
the time prescribed by law, the trustee in insolvency will take such
property or money, subject to the inchoate lien of the attaching
creditor.

Where such payment has been made by an insolvent trader, the fact that the creditor receiving the same did not know of the insolvency or of the intended preference, does not avail to prevent the transfer from being set aside under Code, Art. 47, sec. 22.

Where a firm, being insolvent, sells its stock of goods, and thereupon returns to the purchaser a part of the purchase money to be applied by him to the payment of certain promissory notes of the firm, on which he was an endorser, an unlawful preference is created to that extent.

Where a merchant or trader is guilty of acts of insolvency, and creates preferences forbidden by statute, an assignment for the benefit of creditors, subsequently executed by him, has no effect against the trustee in insolvency.

Appeal from the Circuit Court for Allegany County.

The case is stated in the opinion of the Court. A petition in insolvency was filed by the appellee, the First National Bank of Frostburg, against Wm. Parker and Josiah Parker, partners, trading as Wm. Parker & Brother, and certain creditors alleged to have obtained unlawful preferences from them. At the hearing the plaintiff offered the following prayers, the case being tried before the Court (HOFFMAN, J.), without a jury:

*Plaintiff's First Prayer.*—If the Court shall find that the defendants, William Parker and Josiah Parker, were, on or about the 13th day of January, 1894, partners, trading and doing business as William Parker & Bro., and were merchants doing such business, and that at such time said defendants were insolvent or in contemplation of insolvency, and that on or about said date said William Parker and Josiah Parker, as such partners, made a transfer of their stock of goods in their store at Vale Summit, to one Walter T. Parker, for the consideration of $960, and that said firm was largely indebted to said Walter T. Parker at that time, to-wit, in the sum of $1,600.00 ; and shall further find that said transfer was made to said Walter Parker in order to pay part of said debt, and was made with the intent on the part of said Wm. Parker & Bro. to prefer the debt of said Walter Parker against said firm to the extent of $960, and for no other consideration, then such fact amounts to an act

of insolvency on the part of said Wm. Parker & Bro., and renders them liable to be adjudicated insolvents by the order of this Court.

*Plaintiff's Second Prayer.*—If the Court shall find the facts set out in the first prayer, and shall further find that on or about the 2nd day of February, 1894, said Wm. Parker & Bro. sold their stock of goods at Eckart, for the sum of $2,555.00, and thereupon at once paid in full to certain of their creditors their debts against said firm, as follows: To Frederick Mitchel, $65.00; James R. Stewart, $125; Oliver Barnard, $75, and to his daughter-in-law, ——— Parker, the sum of $300, and that said defendants paid their said debts when they were insolvent or in contemplation of insolvency, and with the intent to give them a preference in the payment of their debts over the other creditors of said defendants, then each and all said payments were acts of insolvency on the part of said defendants, and render them liable to be adjudicated insolvents by the order of this Court.

*Plaintiff's Third Prayer.*—If the Court shall find the facts set out in the first prayer, and shall adjudge said defendants insolvent, then said transfer of the stock of goods at Vale Summit, to Walter T. Parker, is void and passed no title to him for the same, and should be declared void by the order of this Court.

*Plaintiff's Fourth Prayer.*—If the Court shall find the facts set out in the first and second prayers, and shall adjudicate said defendants insolvents, and shall further find that on the 21st day of February, 1894, the defendants sold and transferred their stock of goods at Eckhart to the defendant, Andrew J. Willison, for the sum of $2,555.00, and that at that time said Willison was the first endorser on three notes of said Wm. Parker & Bro., one for $200, which was due and was protested on said 21st day of February, ———; one for $155, due about March 17, and one for $200, due about Mch. 20th, 1894, and shall further find that said Willison paid for said stock by his check to said Parker & Bro. for said $2,555, and that immediately upon

receipt of said check said Parker & Bro. gave their check to said Willison for $555.00, covering the amount of said three notes endorsed by said Willison, with instructions to said Willison to pay off said notes, and that said Parker & Bro. were at that time insolvent or in contemplation of insolvency, and that said Parker & Bro. gave said $555.00 to said Willison to relieve him from his liability on said notes on their account, and with intent to prefer said Willison in the claim he would have against said Parker & Bro. on account of said endorsements, and that said Willison paid off said notes, then such facts amount to an illegal preference to said Willison to that amount, and that no title was vested in him to said $555.00, and that said payment to him of said money was a preference, which, under the insolvent law, should be set aside and declared void, and the title to said fund (subject to the rights of the attaching creditors herein) vested in such insolvent trustees as shall be appointed by this Court.

*Plaintiff's Fifth Prayer.*—If the Court shall find the facts set out in first and second prayers, and shall adjudicate said defendants insolvents ; and shall further find that said defendant, Wm. Parker, on or about the 13th day of January, 1894, made a mortgage upon his real estate to the defendant, Jacob S. Jamesson, for $3,500, and that said Parker and Jamesson agreed that $100.00 of the same should be applied by said Jamesson in payment of an indebtedness of said Parker to said Jamesson for that amount, being part of a much larger sum borrowed by said Parker from said Jamesson long before said time, and still due and owing, and that said Jamesson did so retain said $100.00, and did so apply it to his said debt as far as it would go ; and shall further find that at said time said Parker was insolvent or in contemplation of insolvency, and that he paid said $100.00 to said Jamesson, with interest, to make a preference to him in the payment of his said debt to that amount, then that said payment is void and vested no title in said Jamesson to said $100, and that the title to the same against said James-

son will vest in such insolvent trustees as shall be appointed by this Court.

*Plaintiff's Sixth Prayer.*—That if the Court shall find the facts set out in the first and second prayers, and shall adjudicate said defendants insolvent; and shall further find, that on the 23rd day of February, 1894, said William Parker executed the deed of trust offered in evidence, and that he was then insolvent or in contemplation of insolvency, then said deed of trust, under the insolvent law of Maryland, is void and of no effect, and vests no title to the property set out in said deed in the trustee named therein, as against such insolvent trustees as shall be appointed by this Court in this case.

*Plaintiff's Seventh Prayer.*—If the Court shall find that on or about the 13th of January, 1894, the defendants were insolvent and largely in debt to various persons to the amount of ten or twelve thousand dollars, and had no property with which to pay the same, except the stock of store goods at Eckart, worth twenty-five hundred and fifty-five dollars ($2,555.00), and the stock of goods at Vale Summit, worth nine hundred and sixty dollars ($960.00), and certain real estate at Eckart, owned by William Parker, worth less than five thousand dollars ($5,000.00), on which J. S. Jamesson already had a mortgage for fifteen hundred dollars ($1,500.00); and shall further find that said William Parker, on said thirteenth day of January, 1894, executed a mortgage on said real estate to said Jamesson for thirty-five hundred dollars ($3,500.00), and received said loan from Jamesson in cash, and that he told said Jamesson, when he obtained said loan, that he was in financial difficulties and in debt and wanted to borrow said money to meet said debts and assist him in his financial difficulties, and that said Parker, shortly after he received said money, did not use the same in paying his creditors with a large portion of it, but deposited out of this State in a bank in Piedmont (which bank was not his usual bank of deposit or business), thirty-one hundred dollars ($3,100.00) of said money, in the

name and to the credit of the wife of said William Parker, and that said Parker admitted in his evidence, in this case, that his object in placing said money in said bank in his wife's name, was to repay her a loan of one thousand dollars ($1,000.00) she had made to him some years ago, and to secure her a home, and that he thought she could secure her home by paying off said mortgage with said money, and that on the 21st day of February, 1894, said defendants sold their stock of goods at Eckhart for twenty-five hundred and fifty-five dollars ($2,555.00) cash, and paid off certain of their debts in full with about fourteen hundred dollars ($1,400.00) of said money, but that William Parker could not tell what they had done with six hundred dollars ($600.00) of said money, and that of said twenty-five hundred and fifty-five dollars ($2,555.00) he had turned over about four hundred and seventy dollars ($470.00) to A. A. Wilson, the trustee named in his deed of trust to Wilson; and that on the 22nd day of February, 1894, the First National Bank of Frostburg, one of the plaintiffs, issued the attachment in evidence, charging in the affidavit for the same that said William Parker and Josiah Parker had assigned, disposed of or concealed, or were about to assign, dispose of or conceal, some of their property, with intent to defraud their creditors; then from said facts the Court may further find as a fact, that at the time of the issuing of said attachment said William Parker and Josiah Parker had assigned, disposed of or concealed, or were about to assign, dispose of or conceal their property or some portion thereof, with intent to defraud their creditors.

*Plaintiff's Eighth Prayer.*—That if the Court shall find the facts stated in the plaintiff's first and second prayers, and shall adjudicate said defendants insolvent, and shall, under the seventh prayer submitted on behalf of the First National Bank of Frostburg, find that William Parker and Josiah Parker, partners, trading as William Parker & Bro., on the 22nd day of February, 1894, when said attachment was issued, had assigned, disposed of or concealed their

property or some portion thereof, with intent to defraud their creditors, and that said attachment was on said day laid in the hands of one Andrew J. Willison, and on the stock of goods in the store at Vale Summit, and that on the 21st day of February, 1894, said William Parker & Brother gave said Willison a check for five hundred and fifty-five dollars ($555.00), money of said defendants, with directions to use the same in paying off three notes to that amount of the defendants, on which said Willison was endorser, and that two of said notes were then owned and held by the Citizens' National Bank of Frostburg, one for two hundred dollars ($200.00), due March 20th, 1894, and one for one hundred and fifty-five dollars ($155.00), due March 15th, 1894, and that the third note for two hundred dollars ($200.00), was owned and held by the Second National Bank of Cumberland, Md., was due on February 21st, 1894, and protested on that day ; and shall further find that said Willison deposited said five hundred and fifty-five dollars ($555.00) to his own credit in the Citizens' National Bank of Frostburg, on said 21st day of February, 1894, and at said time told the cashier of said bank to charge up said two notes to his account, and that when said two notes, amounting to three hundred and fifty-five dollars ($355.00), fell due on March 17th and March 20th, they were charged up to his account on the days said notes fell due, respectively, but not before, and that on the 22nd day of February, 1894, said Willison sent his check to the Second National Bank of Cumberland for two hundred dollars ($200.00) to pay said protested note, which check reached said bank on the 23rd day of February, 1894, and was returned by said bank for collection to the Citizens' National Bank, and paid by it on the 24th day of February, 1894, and not before ; and if the Court shall find the facts set out in plaintiff's fourth prayer, and shall adjudicate said five hundred and fifty-five dollars ($555.00) a preference under the insolvent law, and shall declare the said payment to said Willison void, and set the same aside, and require said Wil-

lison to turn over the same to the insolvent trustee, then said attachment became a lien upon said five hundred and fifty-five dollars ($555.00) in the hands of said Willison, and became a lien on the stock of goods at Vale Summit, subject to the right of the insolvent trustee to recover said money from Willison, and to reduce said stock of goods to money, and said attaching claim is entitled to be distributed to in the settlement of said insolvent estate, as a lien on said fund prior to the general creditors of said defendants.

The defendant, Willison, offered the following prayers:

*Willison's First Prayer.*—A. J. Willison, by his attorney, prays the Court to declare as a matter of law, that if the Court, sitting as a jury, shall find from the evidence that said Andrew J. Willison, on the 21st day of February, 1894, purchased from William Parker and Brother, the defendants, their stock of goods, wares and merchandise, together with the good will of the business at their store at Eckhart mines, at and for the sum of $2,555.00, and that said purchase was made in good faith on the part of said Willison, and the whole amount of the said purchase money was *bona fide* paid by him (said Willison) to the said defendants at the time said sale was made, then said sale was lawful, valid and binding, even though the Court, sitting as a jury, shall find from the evidence that said William Parker and Brother were insolvent at the time said sale was made; and even though the Court, sitting as a jury, shall further find that said William Parker and Brother used a part of said purchase money for the payment of certain notes mentioned in evidence, upon which said Willison was endorser.

*Willison's Second Prayer.*—Andrew J. Willison, by his attorney, prays the Court to declare as a matter of law, that if the Court, sitting as a jury, shall find the facts set out in said Willison's first prayer; and shall further find, that immediately after the sale therein mentioned, and before the writ issued in the attachment proceedings mentioned in the evidence had been served upon said Willison, said William Parker and Brother gave to said Willison their check for

$555.00, with instructions to apply the proceeds thereof to the payment of a certain note mentioned in evidence, upon which said Willison was the endorser, and that said Willison accepted the same with the understanding and agreement that the same was to be so applied by him, and the proceeds of said check were not more than sufficient for the payment of said notes, then that such proceeds were not subject to the attachment served upon said Willison as aforesaid.

*Willison's Third Prayer.*—And further prays the Court to declare, as a matter of law, that if the Court, sitting as a jury, shall find the facts set out in his first and second prayers, and shall further find that the notes to which the proceeds of said check were to be applied were as follows, to-wit: One note in the Second National Bank of Cumberland for $200.00, and two in the Citizens' National Bank of Frostburg—one for $155.00, and the other for $200.00; and shall further find that said Willison, immediately upon receipt of said check of Parker Brothers, took and deposited the same to his own account in the Citizens' National Bank of Frostburg, and then and there instructed the cashier thereof to charge his (Willison's) account with the said two notes of said Parker Brothers, and that said cashier then and there agreed so to do, and afterwards did so charge the same, and that he (Willison) also immediately drew his own check on his said account in said Citizens' National Bank for the sum of $202.07, payable to Daniel Annan, cashier of the Second National Bank of Cumberland, and at once sent the same by mail to said bank in Cumberland, with instructions to apply the same to the payment of said note of Parker Brothers in said bank and protest costs thereon; and shall further find that the writ of attachment mentioned in the evidence was served on said Willison after he had applied the proceeds of said check of Parker Brothers in the manner above set out, then that the proceeds of said check were not legally subject to said attachment in Willison's hands, even though the Court, as a jury as aforesaid, shall

further find that as a matter of fact the said cashier of the said Citizens' National Bank of Frostburg did not charge said notes in his bank to said Willison's account until the maturity of said notes, and that said notes did not mature until after the service upon said Willison of the said writ of attachment.

*Willison's Fourth Prayer.*—And if the Court, sitting as a jury, shall find the facts set out in the first, second and third prayers of the said Willison, that then the Court has no power to pass any order in this case requiring said Willison to return said sum of $555.00, or any part thereof, to said Parker and Brothers, or to any trustee or trustees for the creditors of the said Parker and Brothers.

The Court granted the eight prayers of the plaintiff and the first prayer of the defendant Willison, and rejected his second, third and fourth prayers; to which ruling of the Court in granting the plaintiff's eight prayers, and in rejecting his second, third and fourth prayers, the defendant, Willison, excepted.

The order of the Court below by which the defendants, Parker and Brother, were adjudicated insolvents, further adjudged that " the payment by the defendants of the sum of five hundred and fifty-five dollars to Andrew J. Willison, and the transfer of the stock of store goods at Vale Summit by the defendants to Walter T. Parker, and the payment by the defendant, William Parker, of one hundred dollars to Jacob S. Jamesson, were illegal preferences under the insolvent laws of Maryland, and that each and all of the same be and they are annulled and set aside, and said preliminary trustee, or the permanent trustee or trustees who shall hereafter be elected by the creditors, shall proceed to collect from said Willison and from said Jamesson said sums of money, and shall take possession of said stock of goods of the defendant at Vale Summit, and hold the same as part of the estates of said insolvent firm and said insolvents, and said Willison and said Jamesson are hereby directed to pay over said sums of money to said trustees.

" And it is further adjudged and ordered, that the deed of trust dated the 23rd day of February, 1894, made by William Parker to Austin A. Wilson, trustees, be and the same is hereby set aside, and the said Austin A. Wilson is hereby directed to turn over to said preliminary trustees all moneys or property of said insolvent firm, or of either of the members of the same, which has come to his hands.

" And it is further adjudged and ordered, that at the time of the issuing and laying of the attachment of said First National Bank of Frostburg against said defendants offered in evidence, they had assigned or disposed of, and were about to assign or dispose of their property or some portion thereof with intent to defraud their creditors, and that said attachment be and the same is hereby sustained, and that the plaintiff in said attachment case, by the laying of the same in the hands of said Willison and upon the stock of store goods at Vale Summit, acquired a lien upon said fund and upon said stock of goods, and that the preliminary trustees 'or the permanent trustee or trustees hereafter elected in this case be and they are hereby directed to keep a separate account of said money when collected from said Willison and of the proceeds of said stock of goods (all of which shall pass into their hands subject to said lien of said attachment), to the end that in the distribution of said estate regard may be had to the right of priority in such distribution of said attaching creditor."

The cause was argued before ROBINSON, C. J., BRYAN, McSHERRY, FOWLER, PAGE and ROBERTS, JJ.

*Clayton Purnell,* for the appellant, cited: *B. & O. R. R. Co.* v. *Wheeler,* 18 Md. 378 ; *Poe* v. *St. Mary's College,* 4 Gill, 503 ; *Troxall* v. *Applegarth,* 24 Md. 183.

*Robert R. Henderson* and *Benj. A. Richmond,* for the appellee, cited: *Castleburg* v. *Wheeler,* 68 Md. 277 ; *Bowland* v. *Wilson,* 71 Md. 313 ; *Thomas* v. *Brown,* 67 Md. 515 ;

*Baker* v. *Kunkel*, 70 Md. 394; *Buschman* v. *Hanna*, 72 Md. 1; *Brown* v. *Swart*, 69 Md. 324; *Cross* v. *Hecker*, 75 Md. 576; *Troxall* v. *Applegarth*, 24 Md. 182; *Moses* v. *Franklin Bank*, 34 Md. 574.

ROBERTS, J., delivered the opinion of the Court.

Whilst the parties defendant in this case are numerous, but one has appealed from the judgment of the Court below, and now seeks to have his legal rights determined by this Court.

The record shows that one of the appellees, the First National Bank of Frostburg, on February 23rd, 1894, filed its petition in insolvency against William Parker and Josiah Parker, who were then and for many years prior thereto had been partners, trading as merchants, under the firm name of William Parker and Brother, at Eckhart, and also at Vale Summit, in Allegany County, and against the appellants and others, who are alleged to have obtained fraudulent preferences in their dealings with said firm. The proof shows that at the time of filing said petition, said firm was indebted to the petitioners in the aggregate sum of $1,545.00, as evidenced by five several promissory notes then overdue and unpaid, which had been endorsed to the petitioner by said firm, and been duly protested for non-payment. That being insolvent or in contemplation of insolvency and unable to pay their current obligations as the same accrued due, William Parker, one of said firm, executed and delivered to his brother-in-law, Jamesson, a deed of mortgage dated 23rd of February, 1894, and filed for record on May 4th, following, by which he conveyed to him all his real estate for the alleged consideration of $3,500; $100 of said sum was retained by said Jamesson, with the concurrence of said Parker, to pay to that extent a larger indebtedness due said Jamesson. William Parker, at the time of the execution and delivery of

said mortgage, informed Jamesson that he was in financial difficulties and wanted the money to pay his debts, which, however, he did not do, but went out of the State to deposit $3,100 of said loan in a bank in an adjoining State, *in the name of his wife.* Nearly all of the several sums of money obtained by said firm and the individual members thereof, from the sales of their personal and real property and from Jamesson's mortgage, have been applied by them in violation of the provisions of the insolvent laws of the State, as giving unlawful preferences and hindering, delaying and defrauding the creditors of said firm. The said firm being indebted as aforesaid, and also indebted to sundry persons in various sums of money, which they were unable to pay, on the 21st of February, 1894, assigned and conveyed to the appellant all of its stock of goods in the store at Eckhart, for the sum of $2,555.00. Of this sum, when paid over, there was immediately returned by William Parker to the appellant the sum of $555.00, with the understanding that he was to apply the same in payment of three several notes of said firm, on which he was the endorser ; which was accordingly done. In December, 1893, said firm being indebted to Walter T. Parker, a son of Josiah Parker, the nominal member of said firm, in the sum of sixteen hundred dollars, sold to said Walter T., who was the clerk of said firm, their stock of goods in the store at Vale Summit, for the sum of $960.00, for the purpose and with the intent on the part of said firm to prefer the debt of said purchaser to the extent of $960.00.

The record shows that after filing said petition and while said firm and the members thereof were insolvent, and after committing the several acts of insolvency hereinafter stated, William Parker, one of said firm, executed a deed of trust of all his property and estate, including his interest in said copartnership, to Austin A. Wilson, for the benefit of his creditors ; which deed is dated February 23rd, 1894, but was not filed for record until the 4th day of May following. This deed upon its face recites that the grantor therein, William

Parker, is insolvent, and in the answer of said firm to said petition they admit that the said William Parker and Josiah Parker " *were partners in name only.*" On the 22nd day of February, 1894, the First National Bank of Frostburg, one of the appellees, issued an attachment on original process, alleging that said firm had assigned, disposed of or concealed their property, or some part thereof, with intent to defraud their creditors, and the same was laid in the hands of the several parties who had received from said firm unlawful preferences as aforesaid, and did also attach the interest of said firm and of the members thereof in certain real estate mentioned in the sheriff's return.

The petition prays for subpœnas against the debtors, the trustee and the preferred creditors, but none but the debtors, the appellant and Jamesson answered. At the trial below, the parties waived a jury trial, and submitted the issues raised by the petition and answers to the Court for adjudication on the law and facts, without the intervention of a jury.

The appellant answered said petition and denied all knowledge of the several fraudulent preferences charged therein against the other defendants, and says that he admits the purchase by him from said firm of the stock of goods in the store at Eckhart, but denies that said firm was then insolvent, or in contemplation of insolvency, or that said sale to him was made with intent to delay, hinder and defraud creditors of said firm. He also admits that about the same time he purchased said stock of goods, and after he had paid the whole amount—$2,555.00—of the purchase money due thereon to said firm, the said William Parker gave to him the sum of $555.00, and requested him to apply the same in payment of certain notes upon which he was endorser, and that he so applied said money.

Upon the proof offered at the hearing, the Court adjudged the said partners, both as individuals and as partners, insolvents, and appointed preliminary trustees; and further adjudged and decreed, " That the payment by

the defendants of the sum of five hundred and fifty-five dollars to Andrew J. Willison, the appellant, and the transfer of the stock of the store goods at Vale Summit by the defendants to Walter T. Parker, and the payment by the defendant, William Parker, of one hundred dollars to Jacob S. Jamesson, were illegal preferences under the insolvent laws of Maryland; and that each and all of the same be and they are annulled and set aside, and said preliminary trustees or the permanent trustee or trustees, who shall be hereafter elected by the creditors, shall proceed to collect from said Willison and from said Jamesson said sums of money, and shall take possession of said stock of goods of the defendant at Vale Summit, and hold the same as part of the estates, of said insolvent firm and said insolvents, and said Willison and said Jamesson are hereby directed to pay over said sums of money to said trustees."

The only exception in the record is to the action of the Court below, in granting the plaintiff's prayers, and in rejecting the second, third and fourth prayers of the appellant, who alone has appealed from the judgment of the Court below.  It therefore becomes our duty to inquire in what respect, if any, the Court below has committed error by its action on the prayers.

We do not see that the plaintiff's third, fifth and sixth prayers even remotely affect the rights of the appellant, and have not been referred to in the argument before this Court, we shall therefore treat the objection as having been waived. We will, however, remark that if it were necessary to pass upon them, we should say that they correctly declare the law applicable to the facts therein stated.  No exceptions have been filed to any of the plaintiff's prayers for want of evidence to sustain them, and after the careful examination which we have given to the evidence in the cause, we unhesitatingly say that the testimony set out in the record conclusively shows that every material allegation charged against the defendants is satisfactorily established.

The plaintiff's first and second prayers set forth the facts

requisite to bring the case within the requirements of the Code, Art. 47, sec. 14, 22, 23, and correctly announce the law, which should govern in cases of this character, as decided by this Court in *Castleberg* v. *Wheeler*, 68 Md. 277, 279, and in *Bowland* v. *Wilson*, 71 Md. 313. The fourth prayer, referring to the first and second prayers for the facts therein stated, adds the further facts connected with appellant's purchase of the store goods at Eckhart, and the immediate return by Parker to him of $555.00 to pay the notes, which he had indorsed for Parker, the same having been done by Parker when insolvent or in contemplation of insolvency, and with intent thereby to prefer and protect the appellant, then concludes that such payment was an illegal preference to the appellant, which should be set aside, and he be required to refund said sum to the insolvent trustees. This construction is fully sustained by the very terms of the statute *supra*, as well by the decision of this Court in *Brown* v. *Smart*, 69 Md. 331-32.

We have nothing whatever to do with the conclusion on the facts reached by the Court below, sitting as a jury, but we do not hesitate to say that the record contains most ample proof of a deliberate effort on the part of Parker & Bro. to shield certain creditors in violation of the provisions of the insolvent laws, and with intent to hinder, delay or defraud the general creditors outside the list of the favored few.   It is scarcely necessary to give separate consideration to the plaintiff's other prayers, as the principle pertaining to the first and second is in greater or less degree applicable to the remaining prayers.

The First National Bank of Frostburg, before filing its petition, issued an attachment on original process, laying it as hereinbefore stated, the legal effect of which is ascertained and correctly declared by the terms of the seventh and eighth prayers, and is sustained by the decisions of this Court in *Thomas* v. *Brown and Lowndes*, 67 Md. 515; *Buschman* v. *Hanna*, 72 Md. 5; *Dumler* v. *Bergman*, 29 Atl. R. 826.   (To be reported in 78 Md.)

The fact that Willison had no knowledge of the insolvency of Parker & Bro., or that they intended the payment to him as a preference, cannot avail to protect him under the provisions of the Code, Art. 47, sec. 22, which says that a merchant or trader, " when insolvent or in contemplation of insolvency, executes a deed or conveyance giving preferences, creates a lien, making any unlawful preferences as therein stated, or *otherwise gives such preferences*, &c., shall be deemed to have committed an act of insolvency, and by section 32, it is provided that in such cases the creditors can file a petition praying for the adjudication of insolvency, and pending the determination of the application for such adjudication, and pending any question of the validity of any preference or transfer of any property with intent to hinder, &c., or to give an unlawful preference to any creditor, *indorser* or *surety*, the Court shall issue a restraining order, &c., and when such adjudication has been made and when the Court shall have appointed a preliminary trustee, all the estate and property of the debtor shall be divested out of the debtor and devolve on the trustee, and by section 14 any such lien or preference shall be *void.*"

This Court, construing the meaning and effect of the statutes in *Castleberg* v. *Wheeler*, 68 Md. 279, *supra*, says, " The second of these prayers is based upon the theory that though the defendant was actually insolvent at the time of making payments and giving preferences, yet, if he honestly believed he would be *able to go on in business*, and with such belief he paid the debts without a design to give a preference, such payments were not fraudulent as against the insolvent law, and therefore the verdict should be for him on the *third issue*. But the statute makes no such provision as is made the basis of this prayer. The defendant might have believed himself able to go on in business, with the indulgence of his creditors, though he might have known himself to be insolvent, and he might be entirely honest in believing that he would be able to relieve himself of embarrassment by future successes. But that condition

of things would not deprive the creditors of the right to proceed under the statute.   If the party proceeded against belongs to any of the classes of persons mentioned in section 143 of the statute, and being insolvent or in contemplation of insolvency (which means inability to pay debts, when due, in the ordinary course of business), make the transfer or create the lien, which operates to give the preferences, he subjects himself to the provisions of the statute."

The appellant, by the granting of his first prayer, obtained quite as favorable construction of the law as he was entitled to receive, if not more so.   The second, third and fourth prayers of the appellant were rejected, and we think the Court committed no error in thus disposing of them.   The statute to which reference has been heretofore made, and the authorities heretofore referred to, sufficiently dispose of these prayers.   After having exhausted their ingenuity in devising schemes by which they could escape the provisions of the insolvent law of the State, and having failed in accomplishing their purposes, the debtors resorted to a deed of trust, which was executed on the 23rd of February, 1894, but which was withheld from record until the 4th of May following.   But this could avail nothing, since they had, prior to the execution of the deed, been guilty of acts of insolvency prohibited by the law.   *Riley* v. *Carter*, 76 Md. 611; *Pfaff* v. *Pragg*, 29 Atl. R. 824 (to be reported in 78 Md.)

There are questions in the record which we do not deem it necessary for us further to discuss, but from what we have said, it follows that the judgment of the Court below must be affirmed.

*Judgment affirmed with costs.*

(Decided December 18th, 1894.)