## ATHERTON v. GREEN et al.

(Circuit Court of Appeals, Seventh Circuit. June 10, 1910.)

No. 1,690.

BANKRUPTCY (§ 163*)—PREFERENCE—TRANSFER IN PAYMENT FOR PROPERTY CONVERTED.

A bankrupt conducted a bank as sole owner, and as such banker received a note from defendants for collection and remittance of the proceeds. He collected the note but converted the proceeds to his own use. He was at the time insolvent and within a few days thereafter executed a conveyance to defendants of real estate which he had long owned, sending it to them with directions to hold it until they had definite notice of the closing of his bank. The bank was closed at the time, and, receiving notice of such fact, defendants accepted the deed.

*Held*, that while the conversion of the proceeds of the note gave the bankrupt no title thereto, and defendants were entitled to follow and recover the amount in so far as it remained on hand or was traceable into other property, their acceptance of the conveyance of the property with knowledge of the conversion and insolvency was an election to treat the misappropriation as creating an indebtedness, and they stood in no better position than general creditors, and that the conveyance constituted a preference voidable at suit of the trustee in bankruptcy.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. § 247; Dec. Dig. § 163.*]

Appeal from the District Court of the United States for the Northern Division of the Southern District of Illinois.

Suit in equity by Harvey H. Atherton, as trustee in bankruptcy of James W. Quillen, against J. W. Green and Barnet Trimmer. Decree for defendants, and complainant appeals. Reversed.

The appellant, as trustee of the estate of Quillen, a bankrupt, filed a bill in the District Court to set aside conveyances of real estate (a) by the bankrupt to the appellee Green, for the benefit of the appellee Trimmer, and (b) by Green to Trimmer in compliance with the bankrupt's purpose, alleged to be preferential and voidable under the provisions of the bankruptcy act (Act July 1, 1898, c. 541, 30 Stat. 544 [U. S. Comp. St. 1901, p. 3418]). Upon reference of the issues to a special master and hearing of the testimony, the master found and reported in favor of the appellant for the relief sought in the bill. Exceptions to such findings and conclusions were filed by the appellees; and the trial court, on hearing thereof, sustained the exceptions and dismissed the bill. This appeal is from a final decree accordingly.

The material facts in evidence are uncontroverted and are summarized in the opinion.

John M. Elliott, for appellant.

B. M. Chipperfield, for appellees.

Before BAKER, SEAMAN, and KOHLSAAT, Circuit Judges.

SEAMAN, Circuit Judge (after stating the facts as above). The decree appealed from dismisses the appellant's bill, filed to set aside a transfer of real estate made by the bankrupt in favor of the appellees, alleged to be conveyed and accepted in violation of the bankruptcy act. All the circumstances of the conveyances respectively are established by undisputed evidence, and the legal effect thereof, under the provisions of the act referred to, is the sole question raised.

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

The bankrupt, Quillen, prior to May 20, 1908, was engaged in banking, as sole proprietor of the business conducted under the name of Bank of Ipava, in the village of Ipava, Fulton county, Ill.; and the appellee Green,during all the times in controversy, was cashier of the People's State Bank of Astoria, located in the same county. In May, 1908, the appellee Trimmer placed with the last-mentioned bank, for collection, a note and mortgage owned by him, for $2,100 principal and accrued interest; and cashier Green, for the bank, delivered such note and mortgage to Quillen (as the Bank of Ipava), with instructions to collect principal and interest and return the proceeds to People's State Bank of Astoria for account of Trimmer. Quillen collected the principal on May 13, and on May 16, 1908, collected $121.32 as accrued interest, but failed to remit either amount and appropriated the proceeds either to his personal use or that of his bank. He went to Chicago on the night of May 18th and was there during May 19th, in alleged effort to obtain means for carrying on the bank, returning to Ipava on the evening of May 19th and meantime Green had his son call up the Bank of Ipava, by telephone, to inquire about the collection, but ascertained only that Quillen was absent. The Bank of Ipava was not opened after Quillen's return from Chicago; and it appears from the evidence that its doors were closed on the morning of May 20th, with no cash on hand, except $730 in change—"mostly nickels, dimes, quarters and pennies"—and no "deposits of money in banks and elsewhere."

Petition for voluntary bankruptcy was filed by Quillen June 6, 1908, adjudication thereof was entered June 8th, and the appellant became trustee of the estate in due course. Insolvency of Quillen at all the above-mentioned dates is established, with indebtedness to depositors far in excess of assets.

On May 20, 1908, the bankrupt (without request thereto) executed a deed of conveyance, together with his wife, in favor of the appellee Green, for a village lot which the bankrupt had long theretofore owned, stating the consideration to be $1,700. This instrument was sent to the grantee by mail, together with two promissory notes (one of $575 and the other of $100.25) made by third parties, inclosed with the bankrupt's letter requesting "Green to hold the deed and notes until he heard definitely that he (Quillen) had closed the bank." Green received these papers May 20th, about noon, and "heard definitely," at about 2 p. m. of the same day, that the bank had closed. He immediately informed Trimmer thereof, executed conveyance of the lot to Trimmer, and delivered over both deed and notes above mentioned. Relief is sought by the trustee in bankruptcy, under the present bill, in respect of the above-mentioned transfer of real estate, without reference to the notes turned in; and the net value of the lot so conveyed appears under the testimony to be about $1,300.

We believe, therefore, these premises for the bill to be established: That the grantees (appellees) respectively accepted the transfer with ample notice of the bankrupt's insolvency; that it was made and received by way either of satisfaction or security for the amount theretofore collected for and withheld from the appellees, as above recited,

and not as a purchase of the lot, by either appellee, "in good faith and for a present fair consideration," within the exception provided in section 67(3)e of the bankruptcy act; that prior to such transfer by the bankrupt the lot so conveyed formed a part of his estate, and was neither obtained through nor in any sense represented the proceeds of the above-mentioned collection on account of the appellees; and that the effect thereof was to deplete the estate of the bankrupt for the benefit of the appellees as against general creditors in bankruptcy. Thus the transaction was plainly an unlawful preference, under section 60 of the bankruptcy act, unless the pre-existing relation of the parties—as one of agency or trust, and not that of debtor and creditor—exempts it from such provision.

The decree in favor of the appellees rests (as stated in the opinion filed below) upon these propositions in substance: That the collection was made by the bankrupt as the appellees' agent, and his "wrongful conversion of the money    *    *    *    could not establish the relation of creditor and debtor without the assent" of the principals; that such assent was not given; and that the transfer so made by the bankrupt "to make good or partially good the loss" caused by his conversion was (in effect) "an exchange of properties" made and accepted accordingly, and not in violation of the bankruptcy act. In support of this view the opinion cited Cook v. Tullis, 18 Wall. 332, 21 L. Ed. 933, and Holden v. Western German Bank, 136 Fed. 90, 92, 68 C. C. A. 554, and counsel for the appellee further cites numerous authorities reaffirming and defining the general doctrine that neither a collection thus made nor conversion of the proceeds by the collecting agent creates the relation of creditor and debtor therein, between principal and agent, unless the principal so elects—all in harmony with the well-settled rule applicable to such trust relation. So, the proceeds of the collection belonged to the principals, and the misappropriation vested no right to the fund in favor of the estate in bankruptcy, and the owner in such case is entitled to follow and recover the amount, in so far as it either remains on hand or is traceable into other investments or property derived therefrom. Failing such recourse to the trust fund, it is optional with the owner to treat the misappropriation as an indebtedness, thereby becoming a creditor on a par with other general creditors of the estate and subject to the bankruptcy provisions applicable to such relation. With neither the property nor its proceeds appearing on hand in any form, the fact that the indebtedness arose through conversion of the property gives the owner thereof no right · of preference over general creditors.

When the bankrupt closed his bank on the morning of May 20th, with the proceeds of the collection dissipated and no funds (except the small change above mentioned) nor bank credits remaining to meet liabilities, the ensuing execution and transmission of the deed of real estate owned by the bankrupt, to be accepted by the appellees as indemnity (in part) for misappropriation of their proceeds, in the event of hearing "definitely that Quillen had closed the bank," can bear no interpretation otherwise, as we believe, than treatment of that transaction as an indebtedness for which the conveyance was thus tendered

by way of security or indemnity, and so recognized by the appellees in their immediate and unqualified acceptance, upon advice of closure of the bank. We are of opinion, therefore, that the conveyance was made and accepted as preferential security, out of the general estate of the bankrupt, in the relation of the parties as debtor and creditor, with the property so conveyed neither derived from the misappropriation, nor standing chargeable with the proceeds in any equitable sense; that the transaction is not within the rule upheld in Cook v. Tullis, ante, nor sustainable under any of the authorities cited in support of the decree.

In reference to the case of Cook v. Tullis, which arose under the bankruptcy act of 1867 (Act March 2, 1867, c 176, 14 Stat. 517) containing like provision against preferences, the exchange of securities was made at a time and under circumstances plainly distinguishable from the facts above recited. Homans (the bankrupt) was a banker and had purchased bonds for Tullis, from time to time, which were left with the banker for safe-keeping, inclosed in envelopes, distinctly marked in the name of Tullis and kept in an individual deposit box. Tullis had permitted Homans to take out and use $20,000 of these deposited bonds, upon his substitution of an equivalent amount of bills receivable and promise to replace the bonds when required; and the bonds were so replaced. Subsequently, in March, 1869, without permission or knowledge on the part of Tullis, Homans used from the deposit $6,000 of bonds, for which he first substituted bills receivable, and "in April," 1869, substituted for the bills transfer of a note and mortgage (belonging to him) for $7,000, due in 90 days. The mortgage was not paid at maturity, and "in August," 1869, was taken by Homans from its envelope and placed in the hands of an attorney for collection. On August 26, 1869, Homans failed and was adjudged an involuntary bankrupt September 20th. Tullis ascertained the taking and substitutions last mentioned soon after the failure, "signified his acceptance," and directed the attorneys having the mortgage in charge to commence foreclosure. In suit by the trustee in bankruptcy to set aside the transfer of this security as preferential, it further appeared that Homans was not insolvent when the substitution and transfer was made, and he testified that he inferred (from the earlier transactions) that it would be satisfactory to Tullis and that he "did not apprehend insolvency or bankruptcy." It was there held that the transaction was not in violation of the statute, and that Tullis was entitled to $6,000 of the mortgage proceeds. No sanction appears in that ruling, as we believe, for the present decree in favor of the appellees.

The decree of the District Court is therefore reversed, with direction to enter a decree for relief of the appellant as prayed in his bill.