KEYSTONE WAREHOUSE CO. v. BISSELL.

(Circuit Court of Appeals, Second Circuit. February 10, 1913.)

No. 152.

BANKRUPTCY (§ 165*)—PREFERENCE—CREDITOR.

Bankrupt was a milling company, engaged in blending flour which it purchased from various sellers, who shipped it consigned to themselves in care of defendant, which was a warehouse company. They made drafts on the bankrupt for the price, which they sent, with bills of lading attached, to a bank for collection. Defendant received the flour, stored it in numbered compartments, and held it for the shippers until the drafts were paid, and then for the bankrupt, which withdrew it in quantities as needed in its business. Within four months prior to the bankruptcy, without the knowledge of defendant, bankrupt made various withdrawals of flour from compartments containing shipments for which it had not paid, and on discovery, being unable to replace it, an arrangement was made by which defendant took up the drafts covering such shipments and immediately took indorsements of the bills of lading from the bankrupt, transferring what remained of such shipments as collateral to a note taken from the bankrupt. Some other property was also so transferred as security. *Held*, that at the time of such transaction defendant was not a creditor of the bankrupt, since it held the flour stolen merely as bailee, and that the transfers did not constitute a preference, voidable at suit of the trustee.

[Ed. Note.—For other cases, see Bankruptcy, Cent. Dig. §§ 259, 260, 266; Dec. Dig. § 165.*]

In Error to the District Court of the United States for the Western District of New York; John R. Hazel, Judge.

Action at law by Frederick O. Bissell, trustee in bankruptcy of the D. I. Marshall Milling Company, against the Keystone Warehouse Company. Judgment for plaintiff, and defendant brings error. Reversed.

This cause comes here upon writ of error to review a judgment entered upon the verdict of a jury in favor of defendant in error who was plaintiff below. The action was brought to recover the value of property transferred by the bankrupt within four months of the filing of the bankruptcy petition, and which transfer it was alleged constituted a preference, under section 60, "a" and "b," of the Bankrupt Act. To sustain recovery in such an action it must be shown: (1) That the bankrupt was insolvent at the time the transfer was made; (2) that the effect of the transfer will be to enable one of his creditors to obtain a greater percentage of his debt than any other of such creditors of the same class; and (3) that the person benefiting by

---

*For other cases see same topic & § NUMBER in Dec. & Am. Digs. 1907 to date, & Rep'r Indexes

such transfer shall have had reasonable cause to believe that it was intended by the transfer to give a preference. The facts sufficiently appear in the opinion.

H. D. Williams, of Buffalo, N. Y., for plaintiff in error.

C. E. Ladd and M. W. Comstock, both of Buffalo, N. Y., for defendant in error.

Before LACOMBE, COXE, and WARD, Circuit Judges.

LACOMBE, Circuit Judge (after stating the facts as above). There was conflicting testimony as to whether or not the Milling Company was insolvent when the transfer was made, and as to whether or not the Warehouse Company had reasonable cause at the time to believe that it was insolvent, and that the transfer was intended to give it a preference over other creditors. The verdict of the jury determined these issues in favor of plaintiff, and these branches of the case need not be discussed here. The relations of the parties at the time of transfer will appear from the following summary of the antecedent facts:

The defendant maintained in the city of Buffalo a warehouse for the warehousing of flour and sugar. Besides the space which it thus occupied itself, there were within the limits of its plant other spaces which it sublet to two or more milling companies, of which the Marshall Company was one. The business of the latter company was the blending of various kinds of flour, which, after blending, were put in sacks and sold as a new and distinct product. The greater part of the flour blended by the Milling Company was delivered to the warehouse company by various railroads. Upon the shipment of the flour (which the Milling Company had bought) bills of lading were issued by the railroad companies to the order of the shipper—"notify D. I. Marshall Milling Company, care of Keystone Warehouse Company." The shipper would send to a Buffalo bank a draft on the Milling Company with the bill of lading attached. Upon payment of the draft at the bank, the bill of lading would be delivered to the Milling Company which would then surrender it to the warehouse and receive warehouse receipt. As the flour was received from the railroads it would be placed by the Warehouse Company in various open compartments on the floor of its premises, each compartment containing a car load lot (or fraction thereof) all marked, numbered, and tagged so as to be readily identified. When the Milling Company had paid a particular draft, it would issue to its employés orders for the amount of flour needed for blending to be taken from the lot upon which it had lifted the bill of lading and to which it was entitled.

It appears that for some time before the transactions complained of —defendant contends it was some 2 or 3 weeks; plaintiff that it was 3 months, or more—the employés of the Milling Company, besides taking from the stored flour in the warehouse such as it had obtained title to by paying the shipper's drafts, also removed flour for which no payment had been made and which was still in the custody of the Warehouse Company as bailee of the shipper. The value of the flour thus improperly removed was about $8,000 and it was taken by the

Milling Company's employés without the knowledge of the defendant. As soon as these thefts of flour, or some of them, were discovered, the defendant stopped the Milling Company from taking any more flour whatever from the warehouse, and called upon it to make good the shortage, which it was unable to do. Thereupon, after some negotiations between the parties, the Warehouse Company paid to the banks which held drafts and bills of lading, in three separate checks, upwards of $8,000. The Milling Company gave its note to the Warehouse Company for upwards of $8,000, and turned over to it, as collateral, the property which is the subject of this action. The plaintiff's witness says:

"These bills of lading, which were taken up by the Warehouse Company after the shortage was discovered, covered property that it was claimed was unlawfully withdrawn. Not all of that had been withdrawn which was represented by those bills of lading. There was some portion from all of those cars. I am not sure on that point. There was about $8,000 in all improperly withdrawn. Our shippers in the case of that particular property had shipped on the stuff, and bills of lading had been sent to the banks. The banks were holding the bills of lading, and the Warehouse Company was holding the property until some one produced bills of lading for it."

When the Warehouse Company paid these drafts after discovery of the thefts, it issued warehouse receipts for the flour thus released to the Milling Company, which at once indorsed these receipts to the Warehouse Company. This effected an actual transfer of so much of the flour covered by the bills of lading as had not been stolen. Besides this, the Milling Company turned over "odds and ends," as the witness calls it, consisting of four cars of bran and low-grade flour, which was the property of the Milling Company, and some sacks of "blended flour" which had not been blended from the stolen flour. It was stipulated on the trial that the value of all the property thus taken by the Warehouse Company was $4,390.90, about half the amount it paid to the banks. The action was brought to recover this sum, on the theory that the transfer of such property was a preferential transfer under section 60, "a," "b," of the Bankrupt Act (Act July 1, 1898, c. 541, 30 Stat. 562 [U. S. Comp. St. 1901, p. 3445]).

This section plainly contemplates that the person to whom the transfer is made is one to whom, at the time, the bankrupt is liable. In all the authorities cited on the briefs the court has been able to point out that the relations of the parties were such that the transferee had the right for his own benefit to require the transferror to fulfill an obligation or contract. As the trial judge said:

"The plaintiff's specific claim is that * * * pre-existing liability had its beginning three or four months before the transfer of the warehouse receipts; that it had its beginning in fact at the time that the flour was irregularly withdrawn."

Plaintiff relies upon a decision of the Court of Appeals in the Seventh Circuit. In that case defendants sent a note to a banker for collection and remission of proceeds. He collected, but failed to remit, and subsequently, shortly before bankruptcy, conveyed to defendants some real estate which they accepted. The court held that, although the conversion of the proceeds gave the banker no title, de-

fendants being free to follow and recover the same so far as traceable, their acceptance of the conveyance with knowledge of the conversion and insolvency was an election to treat the misappropriation as creating an indebtedness, and that they stood in no better position than general creditors, and that the conveyance constituted a voidable preference.    Atherton v. Green, 179 Fed. 806, 103 C. C. A. 298, 30 L. R. A. (N. S.) 1053.

The trial judge in the case at bar instructed the jury as follows:

"Whether there was an antecedent liability is a question of fact under the proofs. It is a question for you to decide, and the decision of the question depends upon your belief as to whether defendant exercised the proper degree of care as of the property irregularly withdrawn by the bankrupt."

The defendant excepted to the court's leaving the question of antecedent liability as a question of fact to the jury.    It also requested a charge that:

"No obligation as between the Warehouse Company and the Milling Company arose from time to time as the flour was unlawfully withdrawn unless the defendant had notice of such withdrawals."

This was refused, and exception reserved.    Defendant is therefore in a position to contend here, as it does, that at the time of the transfer defendant was not a creditor of the Milling Company and therefore not within the provisions of section 60.

We are unable to see how the repeated thefts of flour from the compartments of the defendant's warehouse, without any knowledge on its part of the thefts, made it a creditor of the Milling Company. There is a vital distinction between this case and that of Atherton v. Green and similar cases. In the Atherton Case, the note which Green sent to the banker, who converted its proceeds, was the property of Green; the stolen flour was not the property of the Warehouse Company. The shipper (or the bank) owned the flour, and the Warehouse Company was merely a custodian or bailee, to keep it safe for the owner until the purchaser paid for it. It is true that the Warehouse Company could have sued for the stolen flour—its possessory title as bailee gave it the right to do so; but in such action it would sue merely as the trustee for the owner and was bound to turn over the proceeds of such suit, less its own charges against the owner, to such owner. Suppose the bailee had brought suit to recover the value of the stolen flour, and on the trial it were shown that, since the theft, the Milling Company had settled with the shipper (or bank), fully discharging the latter's claim for 50 cents on the dollar, could the bailee recover?

The bank, as holder of the bill of lading, could have sued the Milling Company directly. It could also have brought an independent suit against the Warehouse Company for negligent care of the flour, in which suit it could recover only upon proof of negligence, and might have been defeated by some proof of acquiescence on its part in the Warehouse Company's methods of protecting the stored goods. But that is an independent action, the issues of which are not properly presented in the suit at bar, to which the bank is not a party, and by the decision of which it will not be bound.    The circumstances that

the bank might maintain an independent suit against its bailee does not alter the legal relations of the Milling Company and the Warehouse Company. The Milling Company bought the flour from the shipper, and whether it got possession of the flour with the latter's consent, or against it, by stealing it from the latter's custodian, it was the *debtor* solely of the *shipper* (or the bank) until the flour was paid for. This action is not brought against the creditor, shipper, or bank, to set aside a transfer of property to him or it. On the contrary, the trustee is seeking to recover the value of the property transferred to the Warehouse Company as collateral to the Milling Company's note to it; as if the Warehouse Company had been a creditor of the Milling Company before this note was made. We think it was not such creditor, and that, there being no antecedent liability, the trustee was not entitled to recover.

The judgment is reversed.