Eugene M. FEINBLATT, Trustee of the
Bankruptcy Estate of Joel Kline

v.

Samuel BLOCK.

Civ. No. B–75–1457.

United States District Court,
D. Maryland.

July 26, 1978.

Supplemental Opinion July 27, 1978.

Harvey M. Lebowitz, Lawrence D. Coppel, Gordon, Feinblatt, Rothman, Hoffberger & Hollander, Baltimore, Md., for plaintiff.

Edwin T. Steffy, Jr. and Hooper, Kiefer & Cornell, Baltimore, Md., for defendant.

## MEMORANDUM

BLAIR, District Judge.

This is an action to set aside an allegedly preferential transfer under section 60 of the Bankruptcy Act, 11 U.S.C. § 96.[1] Trial before the court was held on June 26, 1978. The court's findings of fact and conclusions of law are intended to be contained herein even though not expressly so designated. Fed.R.Civ.P. 52.

Plaintiff, Eugene M. Feinblatt, is the duly appointed and qualified trustee of the bankruptcy estate of Joel Kline. Kline, whose securities and land transactions gained him a measure of notoriety in the Baltimore-Washington area in the early 1970's, was adjudicated a bankrupt on October 9, 1973 upon a creditors' petition filed September 21, 1973.

In early 1972 defendant, Samuel Block, entered into negotiations with Kline for the purchase of certain properties for $100,000. After initially depositing $100,000 in a checking account at Citizens National Bank in Laurel, Maryland, Block, at Kline's request, transmitted a check for $100,000 to City Title and Escrow Company, Inc. (City Title). The check, made payable to City Title, was deposited into an escrow account. The funds were to be released to Kline only after Block's attorney approved certain documents relating to the proposed real estate transaction.

Despite the fact that such approval never occurred, Kline obtained the funds deposited by Block in the City Title escrow account shortly after their deposit in November 1972. Kline and Richard Sugarman, president of City Title, had a unique arrangement under which Kline was permitted upon request to withdraw funds deposited by third parties at City Title. Kline made a request for the Block $100,000 deposit, and City Title voluntarily disbursed the funds to Kline. Block was unaware of this transaction at that time.

In early 1973 Kline offered to substitute certain apartment rental properties (the "Carroll Avenue properties") for the warehouse properties that had previously been discussed for sale to Block. Block found this proposed substitution unacceptable. In the spring of 1973, Block and/or his attorney, Edgar B. May, Esq., demanded that the $100,000 deposited with City Title be returned. Richard Sugarman advised them that the money would be returned only if City Title received authorization from both Kline and Block. Thereafter, on July 24, 1973, Block filed suit against City Title in the United States District Court for the District of Columbia. City Title filed a third party claim against Fredmont Investment Corporation, a corporation substantially, if not wholly, controlled by Kline,

1. 11 U.S.C. § 96 provides in pertinent part:

(a)(1) A preference is a transfer, as defined in this title, of any of the property of a debtor to or for the benefit of a creditor for or on account of an antecedent debt, made or suffered by such debtor while insolvent and within four months before the filing by or against him of the petition initiating a proceeding under this title, the effect of which transfer will be to enable such creditor to obtain a greater percentage of his debt than some other creditor of the same class.

.    .    .    .    .

(b) Any such preference may be avoided by the trustee if the creditor receiving it or to be benefited thereby or his agent acting with reference thereto has, at the time when the transfer is made, reasonable cause to believe that the debtor is insolvent. Where the preference is voidable, the trustee may recover the property or, if it has been converted, its value from any person who has received or converted such property .    .    ...

and the actual owner of the Carroll Avenue properties; Joel Kline; and Block's, Inc., a corporation wholly owned by Block.

On September 11, 1973, a settlement agreement was executed by Block, Sugarman, and the attorney for Fredmont and Kline, settling all disputes related to the District of Columbia litigation. The agreement contained a mutual release of all parties to the suit. The major provision of the agreement required that City Title pay $100,000 to Block and/or Block's, Inc. A check for $100,000, dated September 11, 1973, was drawn on a City Title checking account, signed by Sugarman, and made payable to Leonard Collins, an attorney representing City Title. Collins then endorsed it to Edgar May, the attorney for Block and Block's, Inc.

The $100,000 thereby paid to Block constituted the proceeds of the September 7, 1973 transfer of real property, a tract of land called the "Indianhead property," from Kline and his wife to Sugarman. Record title to the property was held by Kline and his wife as tenants by the entireties. On June 29, 1973, however, Kline and his wife had entered into a Voluntary Separation and Maintenance Agreement, whereby Mrs. Kline agreed that she held no beneficial ownership in the Indianhead property and agreed to convey title to any person designated by Mr. Kline. Sugarman obtained a $100,000 mortgage to finance purchase of the Indianhead property. This $100,000 was then paid to Block by means of the check described above.

### Elements of a Preference

In order to establish a voidable preference under the Bankruptcy Act, the trustee must establish a transfer of the bankrupt's property, to or for the benefit of a

creditor for or on account of an antecedent debt, made or suffered while the bankrupt was insolvent and within four months of the initiation of bankruptcy proceedings, and such that the transfer enabled the creditor to obtain a greater percentage of his debt than some other creditor of the same class. 11 U.S.C. § 96(a)(1). A further requirement is that the creditor or his agent at the time of the transfer had reasonable cause to believe that the bankrupt was insolvent. 11 U.S.C. § 96(b).[2]

The parties have stipulated that Kline was insolvent at the time of the transfer, that the transfer was made within four months of the filing of a bankruptcy petition, and that Block received a greater percentage of his claim than did creditors of Kline having claims existing and provable against Kline on September 11, 1973, the date of the payment to Block. Thus, in order to prevail, plaintiff must have proved: (1) that a transfer of property belonging to Kline was made to Block; (2) that Kline was a debtor of Block on account of an antecedent debt; and (3) that at the time of the transfer Block or his agent had reasonable cause to believe that Kline was insolvent.

### Transfer of Kline's Property

It is elementary, of course, that a transfer of property may be set aside as a preference only if the property transferred belonged to the bankrupt. The nature of Kline's ownership interest in the Indianhead property and the proceeds of its sale is determined by state law. See 4A Collier, Bankruptcy ¶ 70.17[7], at 179 (14th ed. 1976). As noted previously, the Indianhead property was held by Kline and his wife as tenants by the entireties. In the absence of an agreement to the contrary, the proceeds of the sale of the property would have

2. In the pretrial order submitted to the court, plaintiff sought to amend the complaint to add a cause of action under section 70(e)(1) of the Bankruptcy Act, 11 U.S.C. § 110(e)(1). That section in effect incorporates the Maryland state bankruptcy act into federal law. At the time of the transfer, Maryland law contained no knowledge requirement. *Annotated Code of Maryland* art. 47, § 14 (1971 Repl.Vol.); *see*

*Willison v. First National Bank of Frostburg*, 80 Md. 196, 30 A. 749, 751 (1894). Defendant has opposed this amendment. Because the amendment does not modify the essential legal theory or basic facts of the case, the court finds no prejudice to the defendant in permitting plaintiff's amendment, and the request to amend is granted.

continued to have been held by the entireties. *See Eastern Shore Bldg. & Loan Corp. v. Bank of Somerset,* 253 Md. 525, 253 A.2d 367, 371 (1969); *Brell v. Brell,* 143 Md. 443, 122 A. 635, 637 (1923). The court concludes, however, that the separation agreement entered into between Kline and his wife operated to destroy the tenancy by the entireties in the proceeds of the sale of the Indianhead property.

■ The court has found that the source of the $100,000 check drawn on the City Title account and ultimately paid to Block consisted of the proceeds of the sale of the Indianhead property. At the time, for the reason just stated, the proceeds belonged solely to Kline. Thus, the transfer was of property belonging to the bankrupt, and therefore depleted the bankrupt's estate. The fact that the payment to Block was made not directly by Kline but through City Title does not save the transfer from being a preference. *See National Bank of Newport v. National Herkimer County Bank,* 225 U.S. 178, 184, 32 S.Ct. 633, 56 L.Ed. 1042 (1912); *Aulick v. Largent,* 295 F.2d 41, 48–50 (4th Cir. 1961). Further, a transfer can constitute a voidable preference regardless of whether the transferee knew that the property transferred was part of the bankrupt's estate. *Aulick v. Largent, supra,* 295 F.2d at 52.

### Antecedent Debt

Quite clearly, no contractual or other formal debtor-creditor relationship existed between Kline and Block. Block's funds, deposited in a City Title escrow account, were misappropriated by Kline. The defendant contends that this appropriation did not serve to make Kline his debtor. Rather, he maintains, it was City Title, not Kline, which had an obligation to repay him the $100,000 deposit.

3. In arguing that a debtor-creditor relationship did not exist between Kline and Block, defendant has relied principally on *Keystone Warehouse co. v. Bissell,* 203 F. 652 (2d Cir. 1913). In that case the trustee of a bankrupt milling company brought suit to set aside a transfer of property from the bankrupt to a warehouse. Employees of the milling company had stolen

■ Defendant, however, misconceives the applicable law. "[A] willing extension of credit is not necessary in order to create an antecedent debt under the preference provision of the [Bankruptcy] Act." *Engelkes v. Farmers Co-operative Co.,* 194 F.Supp. 319, 326 (N.D.Iowa 1961). To the contrary, it is a "well settled rule that property converted, embezzled, or otherwise taken by the bankrupt, or obtained by him by fraud, can be claimed from the bankrupt estate only so long as it can be definitely traced, with the consequence that an attempted repayment by the bankrupt prior to bankruptcy is a preference, except where made from the very property taken." *Morris Plan Industrial Bank of New York v. Schorn,* 135 F.2d 538, 539 (2d Cir. 1943); *accord, Atherton v. Green,* 179 F. 806, 808 (7th Cir. 1910); *Malone v. Gimpel,* 151 F.Supp. 549, 554 (N.D.N.Y.1956), *aff'd,* 244 F.2d 954 (2d Cir. 1957); *Dinkelspiel v. Garrett,* 96 F.Supp. 800, 804–05 (W.D.Ark. 1951); *see Cunningham v. Brown,* 265 U.S. 1, 11–12, 44 S.Ct. 424, 68 L.Ed. 873 (1924).

■ It is undisputed that the $100,000 deposited with City Title belonged to Block. The court has found that Kline, while withdrawing other funds from City Title, specifically misappropriated the money deposited by Block. In such a case, although Block may have had a cause of action against City Title for allowing Kline to withdraw his money, *see* 30A C.J.S. Escrows § 11, at 1004, he certainly had a claim against Kline as well for conversion. *See generally* W. Prosser, Torts § 15 (4th ed. 1971). Kline's misappropriation of Block's money made him Block's debtor at the time of the misappropriation. Because Block was repaid with funds other than those taken by Kline, the payment constituted a voidable preference, provided the other elements have been proved.[3]

from the warehouse flour which it was storing, as a custodian or bailee, for its owner. The milling company thereafter repaid the warehouse, and the trustee sought to void this transfer. The Second Circuit held that the warehouse was not a creditor of the milling company because it was merely a bailee, not the owner, of the flour. On the other hand, the

## Reasonable Cause to Believe

The final element required to be proved to establish a voidable preference under the Act is that Block or his agent had reasonable cause to believe at the time of the transfer that Kline was insolvent. "A creditor has reasonable cause to believe that a debtor is insolvent when such a state of facts is brought to the creditor's notice, respecting the affairs and pecuniary conditions of the debtor, as would lead a prudent business person to the conclusion that the debtor is insolvent." 3 Collier, *supra*, ¶ 60.-53, at 1057–58. Although a mere suspicion does not constitute reasonable cause to believe, if a creditor or his agent is presented with or aware of facts and circumstances that would lead a person of ordinary prudence to make further inquiry into the bankrupt's solvency, then the creditor is charged with knowledge of the facts that an inquiry would have revealed. *In re PRS Products, Inc.*, 574 F.2d 414, 417 (8th Cir. 1978); *Clower v. First State Bank of San Diego, Texas*, 343 F.2d 808, 810 (5th Cir. 1965); 3 Collier, *supra*, ¶ 60.53[2], at 1069. The evidence at trial demonstrated that Washington, D. C. area news media carried extensive news coverage of Kline's investigation by the Securities and Exchange Commission and a federal grand jury and of his subsequent indictment and conviction for perjury. Edgar May, Block's attorney, practiced in Washington. During 1973, numerous creditors of Kline made demands upon him for payment. In early 1973, Block demanded return of his $100,000 deposit. The testimony at trial further indicated that May took pains to attempt to isolate Block from Kline at the time repayment was made. The court finds it probable from these facts and circumstances that Block and/or his agent May knew that Kline was insolvent. At the very least, one or both of them must have known by September 11, 1973 that Kline was in some sort of difficulty. The court finds that reasonable inquiry prompted by this knowledge would have revealed Kline's insolvency.

Alternatively, the court concludes that plaintiff is entitled to recover even absent a showing that Block or his agent had reasonable cause to believe Kline was insolvent. *See* note 2, *supra*.

## Defendant's Counterclaim

Block has asserted a defense and counterclaim against the trustee arising from a payment made by Block to Kline as part of the settlement of the District of Columbia suit against City Title, as well as the proceeds that plaintiff received from the eventual sale of the Carroll Avenue properties. The payment from Block to Kline assertedly was a portion of rent and interest payments that Kline had agreed to make to Block while Block's $100,000 was on deposit in the Laurel bank account. The settlement agreement provided that Block would pay to Kline's attorney "one-half of all moneys, whether interest or rent, at any time received by Block's, Inc. and/or Samuel Block from Fredmont Investment Corporation and/or Joel Kline." The court finds that these potential claims against the bankrupt's estate are not properly maintained in this action. *See* 11 U.S.C. § 108; *Shaw v. Walter E. Heller & Co.*, 385 F.2d 353, 357 (5th Cir. 1967); *California Mercury Record Distributors, Inc. v. Phelps*, 283 F.2d 261, 264–65 (9th Cir. 1960); *see generally* 4 Collier, *supra*, ¶¶ 68.02, 68.03, 68.08, 68.09, 68.14. The defendant may, of course, present his claims in the bankruptcy proceeding. *See* 11 U.S.C. § 93(n).

For the reasons stated above, the court concludes that the defendant received a preference in the amount of $100,000 which is voidable under the Bankruptcy Act. *See* 11 U.S.C. § 96(b). Judgment will be entered separately in favor of the plaintiff trustee against the defendant in the amount of $100,000.

## SUPPLEMENTAL OPINION

On July 26, 1978 the court filed a Memorandum determining that the defendant

court noted, the milling company was a debtor of the *owner* of the flour. *Id.* at 656. The court found it irrelevant that the owner might have an action against the bailee warehouse for negligent care of the flour. Thus, the case not only is not contrary to the principles applied in the instant action, but in fact supports the court's legal conclusion.

had received a preferential transfer in the amount of $100,000. Judgment was entered in favor of the plaintiff trustee in the amount of $100,000.

 Inadvertently, the Order of Judgment did not make mention of the proper measure of interest to be awarded. It appears settled that when a preferential transfer is recovered, interest should be awarded from the date of commencement of the action. *Palmer v. Radio Corp. of America*, 453 F.2d 1133, 1140 (5th Cir. 1971); 3 Collier, Bankruptcy ¶ 60.63[1] (14th ed. 1976). Costs, in accordance with the usual practice, are to be awarded to the prevailing plaintiff.

An amended order of judgment will be entered this date. *See* Fed.R.Civ.P. 60(a).