EDITH H. BURKA, Personal Representative of the Estate of Sam Burka et al. *v.* KENNETH A. PATRICK

[No. 388, September Term, 1976.]

*Decided December 8, 1976.*

The cause was argued before Gilbert, C. J., and Moylan and Powers, JJ.

*Alan S. Burke*, with whom were *Burke, Morse & Burke, P.A.* on the brief, for appellants.

*James M. Griffin*, with whom were *Stedman Prescott, Jr.*, and *Staley, Prescott & Ballman, P.A.* on the brief, for appellee.

GILBERT, C. J., delivered the opinion of the Court.

The premier question asked in this appeal is, does the death of a party to a contract to purchase realty constitute legally excusable impossibility of performance. The appellants, Edith H. Burka, personal representative of the estate of her deceased husband, Sam Burka, and herself, individually, a party purchaser under the contract, are of the belief that when "one [is] dead, [t]he other [is] powerless to [perform]."[1] On the other hand, the appellee, Kenneth A. Patrick, is seemingly of the view that contracts, like heirs and taxes, survive the grim reaper's harvest.

Before undertaking to resolve the issue, we shall set the factual scene from which it was born.

On September 28, 1971, appellee contracted with William S. Murphy and Betty Murphy, his wife,[2] for the purchase of 15.2 acres of land situated in Montgomery County, Maryland. The agreed purchase price was $141,000. Appellee paid to the Murphys a $2,000 deposit. Two weeks later appellee, with the knowledge of the Murphys, assigned his rights in the contract to Sam and Edith Burka. The Burkas agreed to pay appellee $9,000 over and above his contract price with the Murphys. The Burkas paid to appellee the sum of $2,000 "as earnest money." The assignment read in pertinent part:

> "*Received of Sam and Edith Burka, a deposit of Two Thousand Dollars ($2,000.00) as earnest money on the purchase from Kenneth A. Patrick, Realtor, all his rights, title and interest in contract,* dated September 28, 1971, a copy of which is attached and

---

1. Matthew Arnold, 1822-1888, *Stanzas from the Grande Chartreuse*, St. 15. [1855].

2. The Murphys are not parties to this litigation.

made part of this assignment by reference. This assignment is subject to the contingencies contained therein. Said Purchasers of this contract agree to pay Kenneth A. Patrick a consideration of Nine Thousand Dollars ($9,000.00) at the time of settlement and agrees to be bound by and comply with all terms of said contract and to save said Kenneth A. Patrick harmless if they fail to comply with the terms of said contract. *In the event that the sale is not consummated through no fault of Sam and/or Edith Burka, the deposit here-inprovided shall be returned to them and there shall be no obligation from them to pay anything further."* (Emphasis supplied.)

Settlement under the contract was scheduled for November 22, 1971. Sam Burka died on November 21, 1971, and Mrs. Burka, naturally, did not attend the scheduled settlement. The settlement date was rescheduled for December, but Mrs. Burka did not attend. Because of non-fulfillment of the contract, the Murphys forfeited appellee's deposit money.

On September 7, 1972, the appellee filed suit in the Circuit Court for Montgomery County against Edith Burka individually and as personal representative of her husband's estate. Appellee claimed the sum of $9,000 as damages. Mrs. Burka, in her dual capacity, not only pleaded to the suit, but filed a counterclaim for $2,000, which sum represented the earnest money previously paid to appellee by the Burkas.

Both sides moved for summary judgments, which were denied by Judge John J. Mitchell. The causes were then submitted on the pleadings and presentation of counsel to the judge for a determination. Judge Mitchell entered judgment in favor of appellee for the claimed $9,000 and also in favor of appellee as counter-defendant.

The appellants' attack upon the judgment of the circuit court is dihedral. Firstly, they argue that the sentence, "[i]n the event that the sale is not consummated through no fault of Sam and/or Edith Burka, the deposit hereinprovided shall be returned to them and there shall be no obligation for

them to pay anything further," means that if, "because of the ill health of one of the parties," the contract could not be performed, the matter would be dropped after a refund of the earnest money. Sam Burka's death, not being due to his own "fault," they contend, operated as a termination of the contractual liability of both Sam and Edith Burka. Secondly, they assert that "[e]ven if the court were not to find such clause to be clearly effective to discharge appellants, the clause is sufficiently ambiguous and general so that extrinsic and parole evidence can be of use in aid of construction." Why this latter argument is advanced eludes us, because, as we have already noted, the case was submitted to Judge Mitchell on the pleadings, *sans* testimony and without the ambiguity question having been raised. Hence, it has not been preserved for our review. Md. Rule 1085. Should we, nevertheless, agree that "extrinsic and parole evidence" would be helpful in the construction of the particular sentence of the assignment now under review, we would be in the same shoes as the trial court, and that is, without the benefit of such testimony. In any event, we do not view the challenged clause as ambiguous.

We interpret the "no fault clause" of the assignment, not as a general "escape hatch," but rather as meaning that performance by the assignees would be excused in situations such as if they were prevented from performing by the interposition of a judicial, executive or administrative order. *Acme Moving & Storage Corp. v. Bower*, 269 Md. 478, 483-84, 306 A. 2d 545, 547-48 (1973); *Lane v. Dashiell*, 195 Md. 677, 689, 75 A. 2d 348, 354 (1950).

The appellants' initial contention, as we have stated, is that Sam Burka's death effected a discharge of the assignment because Mr. Burka's death was not his fault. The weakness in appellants' argument is that the sale did not fail because of Mr. Burka's death but rather because Edith Burka did not abide by the terms of her contract to purchase. Viewed in that light, the failure to consummate the contract was the fault of Edith Burka individually and as personal representative of Sam Burka's estate.

Cognizant that the precise issue before us does not appear

to have been heretofore decided by a Maryland appellate court, Judge Mitchell relied upon *In re Thompson's Estate,* 164 Kan. 518, 190 P. 2d 879 (1948), to underpin his holding. The *Thompson* court held that a personal representative may specifically enforce a contract between the representative's decedent and others wherein the decedent and the others had agreed to sell property and divide the proceeds.

The case law is that unless the contract is for personal services or by its express provisions terminates upon the death of a party thereto, it survives the death of a party and is binding upon his estate. Thus, in *U.S. ex rel. Wilhelm v. Chain,* 300 U. S. 31, 35, 57 S. Ct. 394, 396, 81 L. Ed. 487, 490 (1937), Mr. Justice Van Devanter, writing for a unanimous court, quoted, with approval, from 1 *Chitty Contracts* 138 (11th Am. ed. 1874), where it is said:

> "It is a presumption of law, that the parties to a contract bind not only themselves, but their personal representatives. Executors, therefore, are held to be liable on all contracts of the testator which are broken in his lifetime; and, with the exception of contracts in which personal skill or taste is required, on all such contracts broken after his death[.]"

Earlier, Mr. Justice Holmes, in *Day v. United States,* 245 U. S. 159, 161, 38 S. Ct. 57, 58, 62 L. Ed. 219, 221 (1917), had addressed himself to the risk one assumes when he enters into a contract. Justice Holmes wrote:

> "One who makes a contract never can be absolutely certain that he will be able to perform it when the time comes, and the very essence of it is that he takes the risk within the limits of his undertaking. The modern cases may have abated somewhat the absoluteness of the older ones in determining the scope of the undertaking by the literal meaning of the words alone. The *Kronprinzessin Cecilie,* 244 U. S. 12, 22. But when the scope of the undertaking

is fixed, that is merely another way of saying that the contractor takes the risk of the obstacles to that extent."

A California appellate court decided in *Horning v. Ladd,* 157 Cal. App. 2d 806, 810, 321 P. 2d 795, 798 (1958), "[c]ontracts do not die with the contractor (with a few exceptions not here involved) unless they contain provision to that effect." *See also Gold v. Salem Lutheran Home Ass'n of the Bay Cities,* 1 Cal. Rptr. 343, 345, 347 P. 2d 687, 689 (1959), wherein the court said that " '. . . contracts must be read in the light of the knowledge of all mankind, that death may come tomorrow,' " quoting from *Rishel v. Pacific Mutual,* 78 F. 2d 881, 883 (10th Cir. 1935). Both *Brantley on Contracts* (2d ed. 1912) and Clark, *Handbook of the Law of Contracts* (4th ed. 1931) underscore the case holdings. *Brantley* at § 124 states, "The rights and liabilities under a contract not involving personal confidence or skill pass by operation of law to the executor or administrator of a deceased party." [3] *Clark,* at § 204, says, "On the death of a person all his personal estate passes, by operation of law, to his executors or administrators, and with it also pass all rights of action on contract which will affect such estate, and all liabilities arising out of contract which are chargeable upon it; and actions on such contracts are brought by or against the personal representative in his own name." (Footnotes omitted.) The rule does not extend, however, to personal service contracts which expire upon the death of either party. *Id., accord, Cates v. Cates,* 268 Ala. 6, 104 So. 2d 756 (1958); *McDaniel v. Rose,* 153 S.W.2d 828 (St. Louis App. Mo. 1941); *In re Loe's Will,* 55 N.Y.S.2d 723 (1945); *Minnehaha Co. v. Willadsen,* 69 S. D. 412, 11 N.W.2d 55 (1943); *Restatement of Contracts* § 459, Comment c (1932); 1 T. Parsons, *The Law of Contracts* Ch. VIII, § 131(n) & (r) (9th ed. 1904); 3 S. Williston, *The Law of Contracts* § 1945 (1920).

---

**3.** Under current Maryland law, with the exception of a "special administrator," the designation "personal representative" includes both "executor or administrator." Md. Ann. Code, Estates and Trusts Article, § 1-101 (o).

The possible reason for the dearth of appellate decisions in this State on the subject is found in Md. Ann. Code art. 50, § 1. Although neither party nor the trial court relied upon that section of the code, it has been, nevertheless, in substantially the same form, part of the statutory law of this State since 1811.[4] Current art. 50, § 1 provides:

> "Where two or more persons are jointly bound by bond, promissory note or by any other writing, whether sealed or unsealed, to pay money or do any other thing and one or more of such persons shall die, his or their executors and heirs shall be bound in the same manner and to the same extent as if the person so dying had been bound severally as well as jointly."

There can be no doubt that the undertaking by Sam Burka and his wife, Edith Burka, was a joint obligation, in writing. *Ergo*, under the provisions of art. 50, § 1, Sam Burka's personal representative was bound to perform the contract just as Sam Burka would have been bound had he survived.

From our examination of the case law and the above quoted statute, we conclude that the rule is that, absent a provision in a contract to the contrary, death no more excuses the performance of a nonpersonal service contract than it exempts persons from its own grasp. We hold that Judge Mitchell did not err in entering judgment in favor of the appellee.

The remaining issue raised by appellant is concerned with the question of the amount of the judgment. We have already held herein that it was Mrs. Burka, individually and as personal representative of Sam Burka's estate, who breached the contract by her refusal to perform in accordance with its terms. Therefore, the ordinary test for

---

4. Laws 1811, ch. 161 § 1 provided:
   "BE IT ENACTED *by the General Assembly of Maryland,* That if two or more persons are jointly bound for the payment of a debt, or for the performance or forbearance of any act, or for any other thing, and one or more of said obligors die, his or their representatives may be charged by virtue of such obligation, in the same manner as such representatives might have been charged if said obligors had been bound severally as well as jointly."

the measure of damages would be the difference between the contract price and the market price at the time and place of the breach. *Kasten Construction Co. v. Jolles*, 262 Md. 527, 278 A. 2d 48 (1971). Appellant argues, however, that such a test should not be applied because the assignment in the instant case was not a "true" real estate contract, inasmuch as appellee was not the owner of the land involved in the transaction. The test to be applied in measuring damages in arrangements such as that now before us may be stated thus: When, as here, a party enters into a real estate purchase agreement and then assigns his interest to a third party, upon breach by the third party, the correct measure of damages is the difference between the contract price payable to the original seller and the amount to be paid by the third party, the ultimate purchaser. *Anno.* "Measure of Damages for Purchaser's Breach of Contract to Buy Real Property," 52 A.L.R. 1511 (1928) at 1529-30; *Lathrop v. O'Brien*, 44 Minn. 15, 46 N. W. 147 (1890); *Roper v. Milbourn*, 98 Neb. 466, 153 N. W. 557 (1915); *McDaniel v. Daves*, 139 Va. 178, 123 S. E. 663 (1924).

Applying the applicable measure of damages to the instant case, we see that the contract price payable to the original seller was $141,000. The amount agreed to be paid by the third party, the appellants, was $150,000. The obvious difference between the two sums is $9,000 and that is the amount of damage sustained by the appellee Patrick. It is also the amount for which Judge Mitchell properly entered judgment in favor of Patrick against appellants.

*Judgment affirmed.*
*Costs to be paid by appellants.*