508 A.2d 510

Nancy Lee BRUCE

v.

**Linda Lee DYER, Personal Representative of the Estate of Horace Allen Bruce.**

No. 1079, Sept. Term, 1985.

Court of Special Appeals of Maryland.

May 13, 1986.

Certiorari Granted July 29, 1986.

**500**

Peyton Paul Phillips (Frederick J. Bower, on brief), Frederick, for appellant.

Laurie R. Gitajn (Alan D. Massengill, on brief), Gaithersburg, for appellee.

Argued before WILNER, BELL, ROSALYN B., and KARWACKI, JJ.

KARWACKI, Judge.

In this case we shall hold that a separation and property settlement agreement, providing certain real property of the parties held as tenants by the entireties should be sold and the proceeds divided between the estranged spouses, created an enforceable interest in that real property which formed part of the estate of the spouse who unexpectedly died prior to any sale being negotiated. The facts on which this holding is based are not in dispute.

Nancy Lee Bruce, the appellant, and her late husband, Horace Allen Bruce, voluntarily separated on July 12, 1984. They executed the separation and property settlement agreement in question on October 11, 1984. That agreement provided, *inter alia:*

MARITAL HOME TO BE SOLD

The parties own, as tenants by the entireties, improved premises known as 10826 Easterday Road, Myersville, Maryland 21773 (the "Home"). The Home is subject to the lien of a mortgage. The parties shall sell the Home putting it up for sale and putting it on the market by October 15, 1984, either directly or through a broker of

their choice, at a price agreed upon by the parties, or, if they are unable to agree, at a price determined by a broker selected by Husband and Wife or their counsel. The parties shall execute any contract to make a sale of the Home and any deed and/or other document necessary to consummate the sale under contract and in accordance with this Paragraph. If for any reason either party does not, within 21 days of delivery to him, execute any listing contract or contract to make a sale of the Home, in accordance with the provisions of this Paragraph, or any deed, instrument or other such document, then the other party may execute the same on his or her behalf as his or her agent pursuant to any agency coupled with an interest, and each party hereby irrevocably appoints the other with the full power of an attorney-in-fact for him or her to execute, acknowledge and deliver any and all necessary or desirable contracts, deeds, releases, mortgages, instruments or documents for the purpose of listing, conveying, clearing or waiving any interest or right in the Home as fully as he could do personally, with full power of substitution and confirming all that the agent and attorney-in-fact or substitute may do or cause to be done. Upon the sale of the Home in accordance herewith, the net proceeds of sale shall be divided 55% to Husband and 45% to Wife. The net proceeds of sale shall mean such sum as remains after deducting from the gross sales price (1) any broker's commissions and/or attorney's fees incurred in connection with the sale, (2) all expenses of the sale and closing costs, (3) the principal, accrued interest and any prepayment penalty due on the mortgage.

\* \* \* \* \* \*

G. As to these covenants and promises, the parties hereto severally bind themselves, their heirs, personal representatives and assigns.

On December 14, 1984, subsequent to the time that the marital residence was offered for sale, but prior to the receipt of any offers of purchase, and while the parties were still married, Horace died as a result of injuries

sustained in an automobile accident. Thereafter, the appellant instituted an action against the personal representative of her husband's estate, the appellee, seeking a declaratory judgment that the appellant was the sole owner of all interests in the marital home free of any claims thereto by the appellee. In her answer to this complaint, the appellee asked the court to "... determine the interest of the Plaintiff and the estate of Horace Allen Bruce in the real property in question by declaring that the Voluntary Separation and Property Settlement Agreement established those interests." The issue thus joined was resolved by the Circuit Court for Frederick County on the appellee's motion for summary judgment. In granting the appellee's motion the court entered a declaratory judgment that "... the interests of the Plaintiff, Nancy Lee Bruce, and the Estate of Horace Allen Bruce are as set out in the Voluntary Separation and Property Settlement Agreement between Nancy Lee Bruce and the late Horace Allen Bruce." In its oral opinion delivered at the conclusion of argument on the motion the court explained its rationale for that judgment, as follows:

> It's clear that the intent of the parties by the agreement was to, in effect, terminate the tenancy by the entireties; that they each spelled out their respective rights in the estate, fifty-five/forty-five percent, as shown; and contractually, I see no reason, by reference to any of the cases, why the parties cannot terminate the estate by a valid contract.
>
> And for that reason I will find that the estate was terminated by the valid contract between the parties, and that Mrs. Bruce did not take the entire property by operation of law upon the death of Mr. Bruce, while they were still married; and I will grant the motion for summary judgment filed by the defendant.

We will vacate the declaratory judgment which was entered for reasons we now explain.

■ We reject the notion that the tenancy by the entireties in the subject property was converted into a tenancy in

common when the tenants executed their separation and property settlement agreement on October 11, 1984. Since the tenants remained married, legal title to the premises continued vested in them as a team, reflecting the traditional view of this tenancy based upon the common law fiction of the "oneness" of a husband and wife. *Beall v. Beall,* 291 Md. 224, 234–35, 434 A.2d 1015 (1981); *Spessard v. Spessard,* 64 Md.App. 83, 91, 494 A.2d 701 (1985). This would be so, even if the agreement had been recorded as permitted by Md.Code (1974, 1981 Repl.Vol.), § 3–102 of the Real Property Article. *Kingsley v. Makay,* 253 Md. 24, 27, 251 A.2d 585 (1969). While they remained husband and wife the tenancy of these spouses could only have been severed by their execution of a deed meeting the requirements of Md.Code, *supra,* § 4–101 and 4–108 of the Real Property Article and its recording pursuant to Md.Code, *supra,* § 3–101. *East. Shore v. Bank of Somerset,* 253 Md. 525, 532, 253 A.2d 367 (1969); *Kingsley v. Makay, supra,* [253 Md. 24] at 27, 251 A.2d 585. Consequently, on the death of her co-tenant by the entireties, the appellant gained sole legal title to the property. *State v. Friedman,* 283 Md. 701, 705, 393 A.2d 1356 (1978).

Whether the appellee is possessed of any enforceable interest in the property, therefore, depends on the effect of her decedent's death upon the promises of the spouses with regard to their former marital home. These promises were incorporated in a comprehensive agreement they executed in light of their domestic discord in an attempt

> ... to settle all questions of custody of their Child, maintenance and support, alimony, counsel fees, their respective rights in the property or estate of the other, and in property owned by them jointly or as tenants by the entireties, and in marital property, and all other matters of every kind and character arising from their marital relationship.

Recognizing the uncertainties of life they expressly bound "themselves, their heirs, personal representatives and assigns" to the performance of the agreement. Nothing in

the agreement suggests that the parties intended that their mutual promises to sell their marital home and divide the proceeds should not survive their possible deaths prior to such a sale being consummated.

Under Md.Code (1974), § 1–101(p) of the Estates and Trusts Article, the property which passes to the personal representative of a decedent

> ... includes both real and personal property, and any right or interest therein. "Property" refers to (1) all real and personal property of a decedent and (2) any right or interest therein which does not pass, at the time of the decedent's death, to another person by the terms of the instrument under which it is held, or by operation of law.

The personal representative is empowered to maintain an action to enforce the decedent's interests in property. Md. Code, *supra*, §§ 7–102 and 7–401(x) of the Estates and Trusts Article. Such property interests include the decedent's rights under contracts he or she entered while alive, except those calling for personal services of the decedent. *Burka v. Patrick*, 34 Md.App. 181, 366 A.2d 1070 (1976). In *Burka* we held that the decedent's duty to perform a contract for the purchase of real estate was enforceable against his personal representative. Chief Judge Gilbert, speaking for this Court, there reviewed the applicable authorities:

> Cognizant that the precise issue before us does not appear to have been heretofore decided by a Maryland appellate court, Judge Mitchell relied upon *In re Thompson's Estate*, 164 Kan. 518, 190 P.2d 879 (1948), to underpin his holding. The *Thompson* court held that a personal representative may specifically enforce a contract between the representative's decedent and others wherein the decedent and the others had agreed to sell property and divide the proceeds.
>
> The case law is that unless the contract is for personal services or by its express provisions terminates upon the

death of a party thereto, it survives the death of a party and is binding upon his estate. Thus, in *U.S. ex rel. Wilhelm v. Chain,* 300 U.S. 31, 35, 57 S.Ct. 394, 396, 81 L.Ed. 487, 490 (1937), Mr. Justice Van Devanter, writing for a unanimous court, quoted, with approval, from 1 *Chitty Contracts* 138 (11th Am. ed. 1874), where it is said:

"It is a presumption of law, that the parties to a contract bind not only themselves, but their personal representatives. Executors, therefore, are held to be liable on all contracts of the testator which are broken in his lifetime; and, with the exception of contracts in which personal skill or taste is required, on all such contracts broken after his death[.]"

Earlier, Mr. Justice Holmes, in *Day v. United States,* 245 U.S. 159, 161, 38 S.Ct. 57, 58, 62 L.Ed. 219, 221 (1917), had addressed himself to the risk one assumes when he enters into a contract. Justice Holmes wrote:

"One who makes a contract never can be absolutely certain that he will be able to perform it when the time comes, and the very essence of it is that he takes the risk within the limits of his undertaking. The modern cases may have abated somewhat the absoluteness of the older ones in determining the scope of the undertaking by the literal meaning of the words alone. The *Kronprinzessin Cecilie,* 244 U.S. 12, 22 [37 S.Ct. 490, 491, 61 L.Ed. 960]. But when the scope of the undertaking is fixed, that is merely another way of saying that the contractor takes the risk of the obstacles to that extent."

A California appellate court decided in *Horning v. Ladd,* 157 Cal.App.2d 806, 810, 321 P.2d 795, 798 (1958), "[c]ontracts do not die with the contractor (with a few exceptions not here involved) unless they contain provision to that effect." *See also Gold v. Salem Lutheran Home Ass'n of the Bay Cities* [53 Cal.2d 289], 1 Cal.Rptr.

343, 345, 347 P.2d 687, 689 (1959), wherein the court said that " '... contracts must be read in the light of the knowledge of all mankind, that death may come tomorrow,' " quoting from *Rishel v. Pacific Mutual,* 78 F.2d 881, 883 (10th Cir.1935). Both *Brantley on Contracts* (2d ed. 1912) and Clark, *Handbook of the Law of Contracts* (4th ed. 1931) underscore the case holdings. *Brantley* at § 124 states, "The rights and liabilities under a contract not involving personal confidence or skill pass by operation of law to the executor or administrator of a deceased party.' *Clark,* at § 204, says, "On the death of a person all his personal estate passes, by operation of law, to his executors or administrators, and with it also pass all rights of action on contract which will affect such estate, and all liabilities arising out of contract which are chargeable upon it; and actions on such contracts are brought by or against the personal representative in his own name." (Footnotes omitted.) The rule does not extend, however, to personal service contracts which expire upon the death of either party. [Citations omitted.] 34 Md.App. at 184–86, 366 A.2d 1070.

In *Shutt v. Butner,* 62 N.C.App. 701, 303 S.E.2d 399 (1983), the Court of Appeals of North Carolina resolved a dispute under facts very similar to those of the instant case. There, tenants by the entireties agreed in a separation and property settlement agreement to sell their marital home and to divide the proceeds. The agreement provided that it would be enforceable against their personal representatives, heirs and assigns. The court held that even though upon the wife's death prior to the property being sold the husband became record fee simple owner of entirety held realty, the wife's executrix could compel the husband to perform his agreement. The court reasoned:

The parties [sic] obligation to sell the property and divide the proceeds was explicit and without ambiguity; nor was it contingent upon either party being alive when the time

to sell came or anything else. The agreement to sell and divide was absolute and unequivocal; only the time was uncertain and that was clearly ascertainable from the terms used.

. . . . .

Nor were the defendant's obligations under the contract terminated by the death of the other contracting party. Few contracts are terminated by death in the absence of explicit provisions therein to the contrary. This is because all know that unexpected and untimely death is a constant possibility and are deemed to make their contracts in light thereof, and also because most contracts can be satisfactorily performed by personal representatives. 17A C.J.S., *Contracts* § 465.

. . . . .

[T]he parties themselves, leaving nothing to chance or the law's operation, had their agreement to provide that:
... this Judgment shall be enforceable against the parties, their personal representatives, heirs and assigns.
Having so contracted, the defendant is bound thereby. 303 S.E.2d 399 at 401.

■ In summary, we conclude that the appellee is possessed of an enforceable interest in the property titled in the name of the appellant. She may obtain appropriate relief to compel a sale of the property and a distribution of the proceeds in accordance with the separation and property settlement agreement entered by her decedent and the appellant.

JUDGMENT VACATED, CASE REMANDED TO THE CIRCUIT COURT FOR FREDERICK COUNTY FOR THE ENTRY OF A DECLARATORY JUDGMENT CONSISTENT WITH THIS OPINION; COSTS TO BE PAID BY THE APPELLANT.