524 A.2d 777

**Nancy Lee BRUCE**

v.

**Linda Lee DYER, Pers. Rep. of the Estate of Horace Allen Bruce.**

**No. 73, Sept. Term, 1986.**

Court of Appeals of Maryland.

May 5, 1987.

422

Peyton Paul Phillips, Frederick, for appellant.

Alan D. Massengill (Laurie R. Gitajn, on the brief), Gaithersburg, for appellee.

Argued before MURPHY, C.J., ELDRIDGE, COLE, RODOWSKY, COUCH and McAULIFFE, JJ., and MARVIN H. SMITH, Associate Judge of The Court of Appeals of Maryland (retired), Specially Assigned.

MARVIN H. SMITH, Judge, Retired, Specially Assigned.

Here a separation and property settlement agreement provided that certain real property of the parties held as tenants by the entireties should be sold and the proceeds divided between the estranged spouses. We shall hold that it created an enforceable interest in that real property which formed part of the estate of the spouse who unex-

pectedly died prior to any sale's being negotiated. The facts are not in dispute.

On October 11, 1984, Horace Allen Bruce and Nancy Lee Bruce, husband and wife, executed a voluntary separation and property settlement agreement. It first stated that the parties had separated. It then said:

"It is the mutual desire of the parties in this agreement to formalize their voluntary separation and to settle all questions of ... their respective rights in the property or estate of the other, and in property owned by them jointly or as tenants by the entireties, and in marital property, and all other matters of every kind and character arising from their marital relationship."

Paragraph 6 of the agreement recited that the parties owned their marital home as tenants by the entireties. The paragraph continued:

"The parties shall sell the Home putting it up for sale and putting it on the market by October 15, 1984, either directly or through a broker of their choice, at a price agreed upon by the parties, or, if they are unable to agree, at a price determined by a broker selected by Husband and Wife or their counsel. The parties shall execute any contract to make a sale of the Home and any deed and/or other document necessary to consummate the sale under contract and in accordance with this Paragraph. If for any reason either party does not, within 21 days of delivery to him, execute any listing contract or contract to make a sale of the Home, in accordance with the provisions of this Paragraph, or any deed, instrument or other such document, then the other party may execute the same on his or her behalf as his or her agent pursuant to any agency coupled with an interest, and each party hereby irrevocably appoints the other with the full power of an attorney-in-fact for him or her to execute, acknowledge and deliver any and all necessary or desirable contracts, deeds, releases, mortgages, instruments or documents for the purpose of listing, conveying, clearing or waiving any interest or right in the Home as

fully as he could do personally, with full power of substitution and confirming all that the agent and attorney-in-fact or substitute may do or cause to be done. Upon the sale of the Home in accordance herewith, the net proceeds of sale shall be divided 55% to Husband and 45% to Wife."

The agreement concluded, "As to these covenants and promises, the parties hereto severally bind themselves, their heirs, personal representatives and assigns."

The husband died on December 14, 1984, as a result of injuries sustained in an automobile accident. At that time no divorce had been obtained and the home had not been sold.

The wife brought a suit in the Circuit Court for Frederick County in which she alleged that the personal representative of the estate of the husband had made claim for a 55% interest in the parcel. She requested the court to pass an order declaring her to be the sole owner of the entire parcel of real estate. The widow maintained that the tenancy by the entireties never terminated during the lifetime of the parties and that sole ownership of the land in question thus vested in her upon her husband's demise. The personal representative, on the other hand, posited that no right of survivorship existed because the separation agreement converted the tenancy by the entireties into a tenancy in common. Following oral argument on the personal representative's motion for summary judgment, the trial judge ruled in favor of the estate:

"There's no question, in my mind, anyway, that the tenancy, the estate can be terminated by contractual agreement between the parties. It's clear that the intent of the parties by the agreement was to, in effect, terminate the tenancy by the entireties; that they each spelled out their respective rights in the estate, fifty-five/forty-five percent, as shown; and contractually, I see no reason, by reference to any of the cases, why the parties cannot terminate the estate by a valid contract.

"And for that reason I will find that the estate was terminated by the valid contract between the parties, and that Mrs. Bruce did not take the entire property by operation of law upon the death of Mr. Bruce, while they were still married; and I will grant the motion for summary judgment filed by the defendant."

In *Bruce v. Dyer*, 67 Md.App. 499, 503, 508 A.2d 510, 512 (1986), the Court of Special Appeals determined that execution of the separation and property settlement agreement did not convert the tenancy by the entireties into a tenancy in common. As a result, "on the death of her co-tenant by the entireties, [Nancy Lee Bruce] gained sole legal title to the property." The court went on to hold, however, that the wife's contractual obligation with respect to the property did not terminate upon the husband's death. In other words, the personal representative was entitled to compel a sale of the property and division of the proceeds in accordance with the terms of the agreement. *Id.* at 507, 508 A.2d at 514.

We granted cross petitions for a writ of certiorari. In this Court the personal representative insists that the separation and property settlement agreement converted the tenancy by the entireties into a tenancy in common. Thus, she argues, the Court of Special Appeals "achieved the correct result, but by an incorrect theory." The widow, on the other hand, does not take issue with the first portion of the intermediate court's holding. Rather, she argues that her husband's death operated to terminate the separation and property settlement agreement, thereby "eliminating any cause of action in the husband's heirs to enforce said agreement to sell real property as against the wife."

I

Although some states have either abolished or significantly altered the estate of tenancy by the entireties, *see, e.g., Columbian Carbon Co. v. Kight,* 207 Md. 203, 207, 114 A.2d 28, 30 (1955), Maryland retains the estate in its traditional form. *Id.* at 208, 114 A.2d at 31; *accord Arbesman*

*v. Winer*, 298 Md. 282, 468 A.2d 633 (1983) (discussing at length the nature of the estate and reviewing cases illustrative of its continuing validity in Maryland). 2 H. Tiffany, *The Law of Real Property* § 430 (B. Jones 3d ed. 1939 & Supp.1987) defines tenancy by the entireties as

> "the tenancy by which husband and wife at common law hold land conveyed or devised to them by a single instrument which does not require them to hold it by another character of tenancy. The title of both husband and wife arises out of the instrument, whether deed, devise or gift, by virtue of which they become seized of the estate. A tenancy by the entirety cannot be created unless the four essential common law unities, namely, interest, title, time and possession, co-exist. Some districts may require the concurrence of a fifth unity, 'person.' A tenancy by the entirety, though differing from a joint tenancy in some particulars, as seizin, possibility of severance and the nature of the survivor's interest, is essentially a form of joint tenancy, modified by the common-law theory that husband and wife are one person. This unity is, it has been said, the distinctive feature of the estate. There are no moieties in a tenancy by the entirety, as each party holds the entire estate. Thus, neither spouse owns an undivided half interest in entirety property; the whole entirety estate is vested and held in each spouse and continues in the survivor." (Footnotes omitted.)

The "unities" mentioned by Tiffany have reference to the creation of the estate. They consist of requirements that the tenants enjoy identical interests; enjoy identical, undivided possession; and that the tenancy commence at the same time via the same instrument. *Alexander v. Boyer*, 253 Md. 511, 519, 253 A.2d 359, 364 (1969) (quoting 2 *American Law of Property* § 6.1, at 4 (J. Casner ed. 1952)); 2 Tiffany, *supra*, § 418.

Maryland law is in accord with the principles set forth in Tiffany. In *Marburg v. Cole*, 49 Md. 402 (1878), Judge Alvey said for the Court:

"By the common law of England, which is the law of this State, except where it has been changed or modified by statute, a conveyance to husband and wife does not constitute them joint tenants, nor are they tenants in common. They are, in the contemplation of the common law, but one person, and hence they take, not by moieties, but the entirety. They are each seised of the entirety, and the survivor takes the whole. As stated by Blackstone, 'husband and wife being considered as one person in law, they cannot take the estate by moieties, but both are seised of the entirety, *per tout, et non per my;* the consequence of which is, that neither the husband nor the wife can dispose of any part without the assent of the other, but the whole must remain to the survivor.' 2 Bl. Com. 182." 49 Md. at 411, *quoted in Arbesman,* 298 Md. at 286–87, 468 A.2d at 635.

A tenancy by the entireties may be terminated or severed while both spouses are alive. In that event, the estate becomes a tenancy in common, and, among other things, the right of survivorship is extinguished. *See, e.g., Meyers v. Loan & Sav. Assn.,* 139 Md. 607, 116 A. 453 (1922); *Reed v. Reed,* 109 Md. 690, 72 A. 414 (1909). The granting of an absolute divorce will sever a tenancy by the entireties.[1] Failing that, some form of joint action by the husband and wife is necessary in order to achieve a severance.[2] *See, e.g., Beall v. Beall,* 291 Md. 224, 434 A.2d 1015 (1981); *East. Shore v. Bank of Somerset,* 253 Md. 525, 532,

---

1. The estate does not terminate, however, where the parties merely obtain a divorce *a mensa et thoro. See, e.g., Keen v. Keen,* 191 Md. 31, 60 A.2d 200 (1948); *Joyce v. Joyce,* 10 Md.App. 516, 522 n. 10, 276 A.2d 692, 696 n. 10 (1970). Likewise, the estate does not terminate where the parties are merely living separate and apart. *Elko v. Elko,* 187 Md. 161, 49 A.2d 441 (1946).

2. Unlike a joint tenant, a tenant by the entireties may not alienate his interest without the other tenant's consent. *E.g., Diamond v. Diamond,* 298 Md. 24, 467 A.2d 510 (1983); *Beall v. Beall,* 291 Md. 224, 434 A.2d 1015 (1981). Similarly, a creditor may not reach tenant by the entireties property to satisfy the debt of an individual spouse. *Diamond,* 298 Md. at 29–30, 467 A.2d at 513 (and cases cited therein).

253 A.2d 367, 371 (1969); *Schilbach v. Schilbach,* 171 Md. 405, 407–08, 189 A. 432, 433–34 (1937). In *East. Shore* Judge Barnes said for the Court:

"The important thing to observe is that during the lifetime of both, the tenancy by the entireties can be terminated by the joint action of both and a conveyance by both to a third person does terminate a tenancy by the entireties in the land, but the proceeds ordinarily continue to be held by the entireties. *Beard v. Beard,* 185 Md. 178, 44 A.2d 469 (1945); *Brell v. Brell,* 143 Md. 443, 122 A. 635 (1923)." 253 Md. at 532, 253 A.2d at 371.

Divorce and joint conveyance to a third person, however, do not constitute the only means by which a tenancy by the entireties in real property may be terminated. Maryland Code (1974) § 4–108(b), Real Property Article, provides:

"Any interest in property held by a husband and wife in tenancy by the entirety may be granted, (1) by both acting jointly, to themselves, or to themselves and any other person, in joint tenancy or tenancy in common; (2) by both acting jointly, to either husband or wife and any other person in joint tenancy or tenancy in common; and (3) by either acting individually to the other in tenancy in severalty, without the use of a straw man as an intermediate grantee-grantor. These grants, regardless of when made, are ratified, confirmed, and declared valid as having created the type of ownership that the grant purports to grant."

Section 1–101(e) of the Real Property Article, in turn, defines "grant" as including "conveyance, assignment, and transfer." [3] Section 4–108(b) was originally enacted by ch.

---

**3.** Although the Real Property Article does not contain definitions of "conveyance," "assignment," or "transfer," a Revisor's Note accompanying the enactment, in 1974, of the Real Property Article explains that the three terms possess different meanings at common law and that the meanings are not intended to be changed:

"[Subsection (e) of Section 1–101] is new language proposed by the Commission to indicate explicitly that the noun 'grant' and the verb 'to grant' as used in this Article include the common law definitions

484, § 13A of the Acts of 1931 as Code (1924) Art. 50, § 10. It contained substantially different language, making no reference to tenancy by the entireties:

> "A conveyance, release or sale may be made to or by two or more persons acting jointly and one or more, but less than all, of these persons acting either by himself or themselves or with other persons; and a contract may be made between such parties."

In 1970 the General Assembly repealed and reenacted the statute for the purpose of "clarify[ing] the law with respect to direct conveyances between husband and wife." Ch. 492 of the Acts of 1970 (codified as Code (1957, 1968 Repl. Vol., 1970 Cum.Supp.) Art. 50, § 10(b)) expressly authorized tenants by the entireties to terminate the estate via direct conveyance:

> "This section shall be construed to authorize a conveyance of any interest in real or leasehold property (1) by husband and wife as tenants by the entireties, as joint tenants, or as tenants in common to the husband alone, the wife alone, or to the husband and wife as tenants by the entireties, as joint tenants, or as tenants in common, and (2) by either husband or wife alone, or as a tenant by the entireties, a joint tenant, or as a tenant in common to the other spouse alone, or to the husband and wife as tenants by the entireties, as joint tenants, or as tenants in common. All conveyances described in this subsection, whether made before or after the effective date hereof, are ratified, confirmed, and declared valid."

Ch. 371 of the Acts of 1971 added language specifically abrogating the need for "the use of a straw man as an intermediate grantee-grantor." By Ch. 349 of the Acts of

---

of 'conveyance,' 'assignment,' and 'transfer' and their verb forms. This definition is necessary because at common law these terms have different meanings which are not intended to be changed.... Every present reference in this article to 'conveyance' or 'convey' is proposed for deletion and 'grant' is substituted."
Ch. 12, Acts of 1974 (Revisor's Note to § 1–101(e)).

1972 the statute was recast in language virtually identical to that of current § 4–108(b).

Section 4–108 is in derogation of the common law. Under the common law a husband and wife were generally forced to resort to the use of a straw man as an intermediate grantee-grantor if they desired to create or terminate an estate by the entireties and the estate did not arise or terminate by operation of law.[4] *See, e.g., Tizer v. Tizer,* 162 Md. 489, 160 A. 163 (1932) (holding that husband and wife, holding as tenants by the entirety, cannot lease the property so held to the wife or to the husband); *Hale v. Hale,* 332 Mass. 329, 125 N.E.2d 142 (1955); *Runco v. Ostroski,* 361 Pa. 593, 65 A.2d 399 (1949); Annotation, *Validity and Effect of Conveyance by One Spouse to Other of Grantor's Interest in Property Held as Estate by Entireties,* 8 A.L.R.2d 634 (1949, Later Case Service 1985, & Supp.1986) (and cases cited therein). *But see Lang v. Wilmer,* 131 Md. 215, 101 A. 706 (1917) (dictum) (straw man grantor not necessarily required to create tenancy by the entireties—grantor might validly convey to himself and spouse as tenants by the entireties; *Lang* is not irreconcilable with *Tizer,* which involved a purported lease between tenants by the entireties and hence an attempted diminution of the estate).

In determining whether the separation and property settlement agreement in the case at bar was a "grant" of an interest permitted under § 4–108(b) of the Real Property Article, it should be borne in mind that statutes in der-

---

4. Both subsections (a) and (b) of Code (1974) § 4–108, Real Property Article, expressly provide that use of a straw man is unnecessary. Subsection (a) provides:

"Any interest in property may be granted by one or more persons, as grantors, to themselves alone, or to himself or themselves and any other person, as grantees, in joint tenancy, tenancy in common, or tenancy by the entirety without the use of a straw man as an intermediate grantee-grantor. These grants, regardless of when made, are ratified, confirmed, and declared valid as having created the type of concurrent ownership that the grant purports to grant."

ogation of the common law are to be strictly construed. *See, e.g., James v. Prince George's County,* 288 Md. 315, 335, 418 A.2d 1173, 1184 (1980); *MacBride v. Gulbro,* 247 Md. 727, 729, 234 A.2d 586, 588 (1967). As a consequence, unless it could be said that the separation and property settlement agreement meets the requirements of a conveyance, transfer, or assignment of property interest as contemplated by §§ 1–101 and 4–108 of the Real Property Article, the agreement did not effect a termination of the tenancy by the entireties in the realty. Code (1974) § 5–103, Real Property Article provides:

> "No corporeal estate, leasehold or freehold, or incorporeal interest in land may be assigned, granted, or surrendered, unless it is in writing signed by the party assigning, granting, or surrendering it, or his agent lawfully authorized by writing, or by act and operation of law."

The agreement in question is devoid of expressions such as "grant," "convey," "transfer," "assign," and their equivalents. In no respect does the agreement provide for a *present* conveyance, transfer, or assignment of interest in *realty* as between the spouses; rather, it provides for the realty to be placed on the market and the sale *proceeds* to be divided. Consequently, even if the husband and wife here intended to effect an immediate termination of their estate by the entireties in the realty, the agreement fails to comply with the requirement of § 5–103 that a grant of a corporeal estate or incorporeal interest in land be in writing.

■ Two additional principles support this conclusion. First, although in doubtful situations joint tenancies are disfavored by the courts, *see, e.g., East. Shore,* 253 Md. at 532, 253 A.2d at 371; *Register of Wills v. Madine,* 242 Md. 437, 445, 219 A.2d 245, 250 (1966); *Williams v. Dovell,* 202 Md. 351, 358, 96 A.2d 484, 488 (1953); Code (1974) § 2–117, Real Property Article ("Presumption against joint tenancy"), tenancies by the entireties are favored by the law.[5]

---

**5.** For this reason, the personal representative's reliance upon *Williams v. Dovell,* 202 Md. 351, 96 A.2d 484 (1953), in which the Court held

*East. Shore,* 253 Md. at 532, 253 A.2d at 371; *see also Marburg,* 49 Md. 402.

▆ Second, property settlement agreements, like other contracts, are to be interpreted in light of the plain meaning of the language used. In *Goldberg v. Goldberg,* 290 Md. 204, 428 A.2d 469 (1981), Judge J. Dudley Digges explained:

> "Property settlement agreements, as all other contracts scrutinized under the law of this State, are subject to interpretation in light of the settled and oft-repeated principles of objective construction. *Orkin v. Jacobson,* 274 Md. 124, 128, 332 A.2d 901, 903 (1975). 'The written language embodying the terms of an agreement will govern the rights and liabilities of the parties, irrespective of the intent of the parties at the time they entered into the contract, unless the written language is not susceptible of a clear and definite understanding....' *Slice v. Carozza Prop., Inc.,* 215 Md. 357, 368, 137 A.2d 687, 693 (1958). '[W]here a contract is plain and unambiguous, there is no room for construction, and it must be presumed that the parties meant what they expressed.' *Kasten Constr. v. Rod Enterprises,* 268 Md. 318, 328, 301 A.2d 12, 18 (1973); *Little v. First Federated Life,* 267 Md. 1, 6, 296 A.2d 372, 375 (1972); *Devereux v. Berger,* 253 Md. 264, 269, 252 A.2d 469, 471 (1969). Thus, when interpreting a separation agreement, this Court is 'bound to give effect to the plain meaning of the language used.' *Woodham v. Woodham, supra* at [356] 360, 201 A.2d at [674] 676; *Sands v. Sands,* 252 Md. 137, 249 A.2d 187 (1969)." 290 Md. at 212, 428 A.2d at 474–75.

▆ In the instant case, to read the contract as providing for an immediate termination of the entireties estate would amount to supplying a term completely absent from the existing written language. As stated earlier, the agreement provides for a division of proceeds but does not state

that a certain agreement between *joint* tenants evidenced an intent to convert the joint tenancy into a tenancy in common, is misplaced.

that the interest in the realty is to be affected in the interim. It is noteworthy that proceeds from the sale of land held by the entireties ordinarily, but not inevitably, continue to be held by the entireties. *East. Shore,* 253 Md. at 532, 253 A.2d at 371; *Beard v. Beard,* 185 Md. 178, 186, 44 A.2d 469, 472 (1945); *Brell v. Brell,* 143 Md. 443, 450, 122 A. 635, 637 (1923). At most, then, this agreement evidences an intent that tenancy by the entireties would not continue in the proceeds.

Few in number, cases from other jurisdictions demonstrate a split of authority as to whether an agreement to sell realty held in tenancy by the entireties and to divide the proceeds causes an immediate conversion of the estate into a tenancy in common, especially where the agreement remains silent as to its immediate effect. In *Jonas v. Logan,* 478 So.2d 410 (Fla.Dist.Ct.App.1985), a creditor (mortgage holder) of one spouse contended that the following language in a property settlement agreement converted a tenancy by the entireties into a tenancy in common upon execution of the agreement:

"The Husband agrees to forthwith produce the deed on said marital home to the Wife and execute a Quit-Claim Deed to the Wife, thereby giving up any right, title or interest which he may claim in the said property within fourteen (14) days from the date of signing this Agreement." 478 So.2d at 411.

The Florida court disagreed, stating:

"The property settlement agreement discloses that the parties intended to convey Mr. Logan's interest upon execution of the quit-claim deed to Mrs. Logan.... Although a husband and wife may contract to terminate an estate by the entireties, contractual termination did not occur in this case. *The parties merely agreed that Mr. Logan would convey the property to Mrs. Logan at a later date. They did not agree to change the status of the property prior to the conveyance.*" 478 So.2d at 411 (emphasis added).

*Cf. Snow v. Mathews,* 190 So.2d 50 (Fla.Dist.Ct.App.1966) (separation agreement converted tenancy by the entireties into a tenancy in common where the agreement specifically recited "upon the execution of this agreement each of the parties shall be a tenant in common" and where the agreement was executed in accordance with statutory requirements for conveyance of title).

The courts of New York, Massachusetts, and North Carolina have also considered this issue and reached results similar to those obtaining under Florida law. In *Matter of Violi,* 65 N.Y.2d 392, 482 N.E.2d 29, 492 N.Y.S.2d 550 (1985), a separation agreement provided that the wife would have possession of the marital residence, owned in tenancy by the entireties, for up to four years, but that the house would be placed on the market no later than three and one-half years from the date of the separation agreement, with the proceeds of sale to be divided equally. Upon the wife's death shortly thereafter, the husband sold the house. The administrators of the wife's estate brought an action to recover one-half of the proceeds. The New York Court of Appeals held that the execution of the separation agreement did not transform the tenancy by the entireties into a tenancy in common:

"That the separation agreement established both a time limit for the sale of the property and a mechanism for determining the minimum price does not elevate it to the status of an instrument to 'make partition or division of * * * real property' within the meaning of the General Obligations Law. There is no language in the agreement evincing an intent to alter the form of ownership. Nor does the provision in the separation agreement for the waiver and relinquishment of 'any and all rights [each party] may now have or hereafter acquire * * * to share in the property of the estate of the other as a result of marriage' compel a contrary conclusion, since in the case of a tenancy by the entirety the estate of a deceased spouse would not in any event have an interest in the property.

"In reaching this conclusion, we are mindful also of a public policy favoring certainty in title to real property, both to protect bona fide purchasers and to avoid conflicts of ownership which may engender needless litigation (*see, Barkenthien v. People,* 212 NY 36, 44, [105 N.E. 808] *rearg denied in opn* 213 NY 554 [107 N.E. 1034]). As a general matter, title to estates in land should be altered only by clear expressions of intent. No such intent having been expressed here, the tenancy by the entirety continued until the time of [the wife's] death, when [the husband] became sole owner of the property." 65 N.Y.2d at 396–97, 482 N.E.2d at 32, 492 N.Y.S.2d at 553.[6]

*See also Schiller v. Schiller,* 80 A.D.2d 164, 439 N.Y.S.2d 476 (1981).

Both the Appeals Court of Massachusetts and the Court of Appeals of North Carolina have construed separation agreements calling for sale of tenancy by the entireties property and division of the proceeds. *See Pavluvcik v. Sullivan,* 22 Mass.App. 581, 495 N.E.2d 869 (1986); *Shutt v. Butner,* 62 N.C.App. 701, 303 S.E.2d 399, *discretionary review denied,* 309 N.C. 462, 307 S.E.2d 367 (1983). In each case, the court involved summarily concluded that execution of the agreement did not convert the estate into a tenancy in common.

The personal representative argues that at least two courts, if faced with an agreement similar to that in the case at bar, would view the agreement as converting a tenancy by the entireties into a tenancy in common. *Feinblatt v. Block,* 456 F.Supp. 776 (D.Md.1978), *aff'd in part and modified in part,* 605 F.2d 1201 (1979) (unreported), involved the question of whether a transfer of $100,000 by a bankrupt to a third party constituted a voidable preference. The money represented proceeds from the sale of property which the bankrupt and his wife had owned as tenants by the entireties. Prior to selling the property, the bankrupt

---

6. As noted *infra,* the court also rejected the notion that the wife's estate was entitled to recover under an "equitable lien" theory.

and his wife entered into a voluntary separation and maintenance agreement in which the wife agreed that she held no beneficial interest in the property and that she would convey title to any person designated by her husband. Applying Maryland law, the federal court concluded that the separation agreement "operated to destroy the tenancy by the entireties *in the proceeds of the sale* of the . . . property." 456 F.Supp. at 780 (emphasis added). The *Feinblatt* court concerned itself solely with the effect of the agreement upon the proceeds. It had no reason to address the effect of the agreement upon the ownership of the realty and did not purport to do so. To that extent, *Feinblatt* simply is not relevant.

*Rucks v. Taylor,* 282 Ark. 200, 667 S.W.2d 365 (1984), appears to be the only decision on point holding that the agreement before it destroyed the tenancy by the entireties. In deciding *Rucks,* the Supreme Court of Arkansas found the following language from the agreement to "show [ ] an intent to terminate all property rights between the parties with the signing of the agreement":

"WHEREAS, it is the desire and intention of the parties that *all rights, interest, liabilities, and relations, with respect to property and financial matters be finally and conclusively fixed and determined by this agreement* in order to settle and determine in all respects and for all purposes their respective present and future property rights, claims and demands in such a manner that any action with respect to the rights and obligations, *past, present,* or *future, of either party,* with respect to the other, *be finally and conclusively settled and determined by this agreement."* 282 Ark. at 202, 667 S.W.2d at 366 (emphasis by the Arkansas court).

The court said:

"The immediacy and finality of the agreement are apparent, from the following:

'Subject to the provisions of this agreement, each of the parties may hereafter dispose of his or her property of whatsoever nature, real or personal, and each party

hereby waives any and all right or interest which he or she might otherwise have in and to the estate of the other. The Wife specifically renounces and releases all interest, right or claim of right of dower, or homestead, that she now has, or might otherwise have, against the property and estate of the Husband.'

"The parties intended to dispose of all property rights between them upon execution of the agreement....

"While the language is clear that the tenancy by the entirety was to cease, we express concern, as we did in *Killgo, supra,* for the certainty and reliability of the title to real property." 282 Ark.2d at 202–03, 667 S.W.2d at 366 (distinguishing *Killgo v. James, Executrix,* 236 Ark. 537, 367 S.W.2d 228 (1963)).

In summary, although the issue is one of first impression in Maryland, both existing Maryland law and the better-reasoned cases from other jurisdictions indicate that the spouses in the case at bar continued to own the land in question as tenants by the entireties following the execution of their separation and property settlement agreement, and we so hold.

## II

Code (1984) § 8–101, Family Law Article, addresses generally the validity and enforceability of property settlement agreements between spouses:

"(a) *Deed or agreement.*—A husband and wife may make a valid and enforceable deed or agreement that relates to alimony, support, property rights, or personal rights.

"(b) *Settlement.*—A husband and wife may make a valid and. enforceable settlement of alimony, support, property rights, or personal rights."

In addition, the validity of such agreements has long been judicially recognized in Maryland. *See, e.g., Brown v. Brown,* 248 Md. 139, 144, 235 A.2d 706, 709 (1967); *Grossman v. Grossman,* 234 Md. 139, 145, 198 A.2d 260, 263

(1964). The general principles governing other types of contracts apply to property settlement agreements between husband and wife. *Heinmuller v. Heinmuller,* 257 Md. 672, 676, 264 A.2d 847, 849 (1970); *Pumphrey v. Pumphrey,* 11 Md.App. 287, 273 A.2d 637 (1971).

18 S. Williston, *A Treatise on the Law of Contracts* § 1945, at 75–76 (W. Jaeger 3d ed. 1978) states the general proposition:

"Unless a contractual obligation is personal in character, death of the obligor will not discharge it, although no right of action had accrued prior to the death, and although the obligation is a guaranty where the only consideration was the credit given to the principal debtor." (Footnotes omitted.)

In *Burka v. Patrick,* 34 Md.App. 181, 182, 366 A.2d 1070, 1071 (1976), Chief Judge Gilbert opened the opinion by saying for the court, "The premiere question asked in this appeal is, does the death of a party to a contract to purchase realty constitute legally excusable impossibility of performance[?]" He further said for the court:

"The case law is that unless the contract is for personal services or by its express provisions terminates upon the death of a party thereto, it survives the death of a party and is binding upon his estate. Thus, in *U.S. ex rel. Wilhelm v. Chain,* 300 U.S. 31, 35, 57 S.Ct. 394, 396, 81 L.Ed. 487, 490 (1937), Mr. Justice Van Devanter, writing for a unanimous court, quoted, with approval, from 1 *Chitty Contracts* 138 (11th Am. ed. 1874), where it is said:

'It is a presumption of law, that the parties to a contract bind not only themselves, but their personal representatives. Executors, therefore, are held to be liable on all contracts of the testator which are broken in his lifetime; and, with the exception of contracts in which personal skill or taste is required, on all such contracts broken after his death[.]' "

34 Md.App. at 185, 366 A.2d at 1072–73.

Farther on in the opinion the court stated:

"The possible reason for the dearth of appellate decisions in this State on the subject is found in Md.Ann.Code art. 50, § 1. Although neither party nor the trial court relied upon that section of the code, it has been, nevertheless, in substantially the same form, part of the statutory law of this State since 1811. Current art. 50, § 1 provides:

'Where two or more persons are jointly bound by bond, promissory note or by any other writing, whether sealed or unsealed, to pay money or do any other thing and one or more of such persons shall die, his or their executors and heirs shall be bound in the same manner and to the same extent as if the person so dying had been bound severally as well as jointly.' "

34 Md.App. at 187, 366 A.2d at 1073–74 (footnote omitted).

■ In the case at bar the spouses specifically addressed the possibility of one of their deaths by providing that the parties bound not only themselves, but their heirs and personal representatives as well:

"As to these covenants and promises, the parties hereto severally bind themselves, their heirs, personal representatives and assigns."

Courts in other states have recognized that death of a spouse does not of itself operate to terminate a separation agreement. *See, e.g., In re Estate of Loughmiller,* 229 Kan. 584, 629 P.2d 156 (1981); *Pavluvcik,* 22 Mass.App. 581, 495 N.E.2d 869; *Shutt,* 62 N.C.App. 701, 303 S.E.2d 399; *In re Estate of Nelson,* 85 Wash.2d 602, 537 P.2d 765 (1975). This is particularly so where, as here, the agreement recites that it shall bind the parties' heirs and assigns. *In re Brown's Estate,* 28 Wash.2d 436, 183 P.2d 768 (1947).[7]

---

7. A contrary result is warranted where the agreement is conditioned upon the granting of a divorce. *See Bassett v. First Nat. Bank & Trust*

At least two other courts have held that particular separation agreements, which called for the sale of and distribution of proceeds from tenancy by the entireties property but which did not convert the tenancy by the entireties estate, remained enforceable following the death of one of the spouses. *Pavluvcik*, 22 Mass.App. 581, 495 N.E.2d 869 (citing the Court of Special Appeals' opinion in this case, *Bruce v. Dyer*, 67 Md.App. 499, 508 A.2d 510); *Shutt*, 62 N.C.App. 701, 303 S.E.2d 399. In the factually similar case of *Matter of Violi*, 65 N.Y.2d 392, 482 N.E.2d 29, 492 N.Y.S.2d 550, by contrast, the New York Court of Appeals arrived at a different result. As discussed *supra*, that court first held that the agreement before it did not terminate the tenancy by the entireties. It further held, however, that the estate of the deceased spouse had no equitable lien on half of the sale proceeds; that an attempt to recover under such theory constituted "an impermissible attempt to accomplish by indirection what could not be done directly." 65 N.Y.2d at 397, 482 N.E.2d at 32–33, 492 N.Y.S.2d at 553–54. The court did not consider the issue from the standpoint of contractual relations.

The widow here urges that *Beall*, 291 Md. 224, 434 A.2d 1015, all but controls the instant case. We disagree. In that case a husband and wife offered to sell land, owned by them as tenants by the entireties, to a cousin. The husband died. Subsequently, the cousin moved to accept the offer. He brought suit for specific performance when the widow declined to sell. Among other things, he contended that he accepted the offer before it was withdrawn, thereby creating a binding contract. We held that the wife was not required to convey the property to the cousin because the bare offer to sell had lapsed upon the death of her husband. *Beall*, 291 Md. at 235, 434 A.2d at 1021–22. Judge Cole noted for the Court:

---

*Co.*, 189 Neb. 206, 201 N.W.2d 848 (1972); *cf. Roberts v. Roberts*, 381 So.2d 1333 (Miss.1980). This issue has not been raised in the instant case.

"[W]hen a husband and wife act together with respect to property held as tenants by the entirety, they are required, under traditional legal principles, to be of one mind. Calvin and Cecelia signed a 1975 addendum not in their purely individual capacities but as a team. They acted together in making but a single offer to convey. The correct focus, then, is not upon the individual powers and capacities of Calvin and Cecilia with respect to their survivor interests, but upon the powers and capacities of each in their respective roles as tenants by the entirety." 291 Md. at 234, 435 A.2d at 1021 (footnote omitted).

In reaching this conclusion, the Court stressed the firmly established rule that death of an offeror causes an offer to lapse, terminating the offeree's power of acceptance. Applying that rule to the Bealls' offer, the Court reasoned:

"Viewing the offer of tenants by the entirety as being made by a team rather than the two individuals who make up this team provides a solution in the instant case. The continuation of an offer made in this fashion depends upon the continuous assent of both tenants, for neither can continue an offer to sell without the continued assent of the other. Here, in the absence of consideration to support an option, the vitality of the offer made by Calvin and Cecilia depended upon the continued assent of each; upon Calvin's death, his assent was no longer viable. Hence, the offer lapsed upon the death of Calvin Beall." 291 Md. at 235, 434 A.2d at 1021.

In her brief, the widow attempts to explain the relationship between *Beall* and her case:

"The offer to sell in this case terminated ... just as it did in *Beall* and the facts of this case present a stronger basis to so rule. In *Beall*, there was an agreement between the owners and a third party, whereas *in this case, no offers of purchase had been received or accepted. As in Beall, the property owners' agreement to offer their real property for sale could have been revoked at any time prior to an acceptance. In either situation, the death of one tenant by the entirety owner*

*should operate to terminate the offer to sell."* Brief of appellant at 7 (emphasis added).

The comparison is entirely without merit. As the italicized portions indicate, the widow completely ignores the fact that *Beall* involved a bare offer, which lapses on the death of the offeror, while this case involves a fully formed contract. As a general proposition of law, as we have already indicated, contracts are binding upon the personal representative of a deceased party. However, in this case the parties made plain their intention that the contract carry over to a personal representative when they said, "[T]he parties hereto severally bind themselves, their heirs, personal representatives and assigns." Accordingly, it follows that the Court of Special Appeals did not err when it said:

> "[W]e conclude that the [personal representative of the husband] is possessed of an enforceable interest in the property titled in the name of the [widow]. [The personal representative] may obtain appropriate relief to compel a sale of the property and a distribution of the proceeds in accordance with the separation and property settlement agreement entered by her decedent and the [widow]." 67 Md.App. at 507, 508 A.2d at 514.

JUDGMENT AFFIRMED; COSTS TO BE PAID BY NANCY LEE BRUCE.